DUNCAN DEVELOPMENT CORPORATION, CRESTVIEW DEVELOPMENT COMPANY, and ROSENFELD, Plaintiffs, v. CRESTVIEW SANITARY DISTRICT, Defendant. [Case Nos. 98, 99, 100. Consolidated appeals and cross appeals.]*

*November 27, 1963—January 7, 1964.*

* Motion for rehearing denied, with $25 costs, on March 31, 1964.

For the plaintiffs there were briefs by *Quarles, Herriott & Clemons,* attorneys, and *Laurence C. Hammond, Jr.,* and *Thomas A. Clemons* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the defendant there was a brief by *La France, Thompson, Greenquist, Evans & Dye* of Racine, and oral argument by *Kenneth L. Greenquist.*

HALLOWS, J.   The two questions raised are: (1) Whether the special assessments levied against all the property in the district by the Crestview Sanitary District to finance the cost of the proposed elevated water-storage tank with appurtenances are valid, and (2) whether the particular assessments against the plaintiffs' property are arbitrary, unreasonable, and excessive.

Plaintiffs contend the town sanitary district is without power to levy a special assessment on all real property there-

in and special assessments cannot be levied for general improvements which they argue the elevated water-storage tank is. They also contend the assessments against their property are arbitrary, unreasonable, and excessive because acreage was assessed as platted lots, commercially zoned property as residential property, the water-supply system was in excess of the potential development of the district and the plaintiffs' unimproved lots were assessed at $120 each and the unplatted acreage in multiples of $120 while 296 improved lots were assessed $10.

The defendant contends it may finance this type of improvement by special assessments on all the property in the district because of the special benefits accruing to such property and the assessments made against the plaintiffs' property were based on special benefits greater in degree than property assessed at the lower rate.

A town sanitary district for the purpose of carrying out and performing its duties in addition to the powers given in sec. 60.307, Stats., may levy special assessments "for any improvement within the limits of a sanitary district." Sec. 60.309. If this method of financing is used, sec. 60.309 (1) (b) provides the commissioners "shall then examine the entire area to be improved and severally and separately consider each parcel of real estate therein and determine the benefits to each of said parcels and make assessments thereagainst in an aggregate amount equal to the determined cost of the work to be done. . . ." The assessments are made in accordance with sec. 66.60 relating to special assessments by cities and villages. This latter section provides a city or village may levy "special assessments upon property in a limited and determinable area for special benefits conferred upon such property by any municipal work or improvement," but the amount assessed against any property for an improvement "which does not represent an exercise of the police

power shall not exceed the value of the benefits accruing to the property therefrom."

Public improvements are generally classified as general or local in character. A general improvement confers a substantially equal benefit and advantage on the property of the whole community or benefits the public at large. Such improvements are generally financed by general taxes which under the Wisconsin constitution, sec. 1, art. VIII, must comply with the rule of uniformity. A local improvement, although it may incidentally benefit all the property in the municipality and the public at large, is made primarily for the accommodation and convenience of inhabitants of a particular area in the community whose property receives a special benefit from the improvement either in the form of service or of enhancement of the value. 14 McQuillin, Mun. Corp. (3d ed.), pp. 67–69, sec. 38.11; 48 Am. Jur., Special or Local Assessments, p. 564, sec. 1. Such improvements may be financed by special assessments against the property specially benefited in proportion to the benefits conferred and although being a species of taxation, such assessments are not limited by the rule of uniformity. *Weeks v. Milwaukee* (1860), 10 Wis. 186 (\*242); *Milwaukee v. Taylor* (1938), 229 Wis. 328, 282 N. W. 448; *Williams v. Madison* (1962), 15 Wis. (2d) 430, 113 N. W. (2d) 395.

An improvement which a town sanitary district is authorized to make under sec. 60.30, Stats., may conceivably be general or local depending upon the nature of the improvement and its effect in terms of benefit to the property within the district. The underlying principle determining the method of financing the cost of the public improvement is one of equity and fairness to be determined by the commissioners of the sanitary district. Although an improvement confers a general benefit on all the property in a town sanitary district if in addition and primarily it enhances the value of all the

property in the district but in different degrees, such improvement may be financed by the special assessment. We do not construe sec. 66.60 as necessarily requiring special assessments made pursuant to sec. 60.309 to be limited to an area less than the district. Traditionally, improvements such as water mains or sewer mains installed only on certain streets call for special assessments only against the abutting property, but it does not follow that a central improvement benefiting all the properties in a town sanitary district in different degrees cannot also be financed by special assessments.

Designating an improvement a local or a general improvement is merely another way of stating its nature in terms of benefits to property. We find it difficult to classify improvements abstractly as local or general for the purpose of considering special assessments. What may be called a local improvement under one set of facts may well constitute a general improvement in the context of different facts. In the instant case a sufficient water system existed to service part of the defendant district. The elevated storage tank was necessary to provide water to the rest of the district. It seems apparent in a small sanitary district organized for the purpose of providing water and doing so on what might be said an instalment basis that the basic or initial cost of an elevated storage tank necessary to provide water to property to which water was not theretofore available should be borne by the lots or property receiving the benefit in enhanced value from such improvement and in proportion that the increase in value accruing to such property bears to the cost of the improvement.

It is true as contended for by the plaintiffs that a waterworks considered as a whole does not constitute a local improvement. 14 McQuillin, Mun. Corp. (3d ed.), p. 104, sec. 38.27. But even in such a case, special assessments may be

imposed where an assessment district has been created or there is special statutory authorization. *Santa Clara Valley Land Co. v. Meehan* (1923), 62 Cal. App. 531, 217 Pac. 787; *Mills v. Elsinore* (1928), 93 Cal. App. 753, 270 Pac. 224; contra, *Pomroy v. Pueblo* (1913), 55 Colo. 476, 136 Pac. 78.

We need not go so far as to hold sec. 60.309, Stats., authorizes special assessments for "any improvement" (including a general improvement, the cost of which may be considered to be the cost of sustaining the government) by the sanitary district and removes the traditional limitations on special assessments; it is sufficient to state that an elevated storage tank which was primarily necessary to make water available to part of the district and which also added special benefits to the remaining part of the district may be financed by special assessments authorized by the statute. The fact the improved property in the district which already was receiving water service also received a special benefit in way of greater security in the availability of water does not convert the improvement into a general improvement because such additional benefit was different in degree and therefore such property was also subject to its proportion of the cost of such improvement based on enhanced value.

It is contended that if the special assessment method of financing is proper, the particular assessments on the plaintiffs' properties are arbitrary, unreasonable, and excessive. The Crestview Sanitary District levied assessments based on benefits conferred on the property as required by sec. 60.309, Stats. Unplatted acreage was assessed on the basis of the number of residential lots or building sites which such acreage would best lend itself for use. It seems to us it is unreasonable to contend that an eight-acre piece of property within a sanitary district is only enhanced in value by the availability of water to the same extent as a one-half acre or

three-fourths-acre lot. Acreage for the purpose of special assessments may be considered not only in reference to its present use but in reference to its adaptability for a higher and more-valuable future use. *Superior v. Lake Superior Terminal & Transfer R. Co.* (1913), 152 Wis. 389, 140 N. W. 26. See also *Dickson v. Racine* (1886), 65 Wis. 306, 27 N. W. 58.

Even though some of the plaintiffs' acreage is zoned for agricultural purposes, it was included within the district when the district was established and thus found to be property which would be benefited by the establishment of the district. It is too late now to argue in effect such property should be outside the district or should not bear the cost of being within the district. *Fort Howard Paper Co. v. Fox River Heights Sanitary Dist.* (1947), 250 Wis. 145, 26 N. W. (2d) 661. We find no merit in the argument of disproportion because property zoned as commercial was treated as residential for the purposes of benefits. Commercial building sites are enhanced in value by the availability of a water supply the same as residential sites.

From what has been said it should be obvious that unimproved lots, for which no water supply was available, were enhanced in value by the availability of water to a much-greater extent than improved lots which already had a supply of water available and in most cases were connected to the water supply. No claim is made that the plaintiffs' unimproved properties were not enhanced in value by the extent of the assessments. The claim made is that in relation to the improved lots, the amount of assessment was discriminatory, arbitrary, and unreasonable. We do not agree.

The trial court was in error in holding the assessment invalid as to some of the plaintiffs' property because it was not certain to enjoy the use of water within a reasonable time in the future, relying on *Wm. H. Heinemann Creameries v.*

*Kewaskum* (1957), 275 Wis. 636, 82 N. W. (2d) 902. A distinction should be made between the special benefits by way of enhancement of value derived from the availability of a water supply and the actual enjoyment of such water by reason of connections to water mains adjacent to or nearby the property. The availability of a central facility to supply water enhances the value of property over the value of a lot or property whose only source of water would be a private well. An additional enhancement in value accrues when water mains are laid in the street or adjacent to the property so that a connection can be made for actual use. The trial court was under the impression that unless water mains were in the street or adjacent to the property, such property was not enhanced in value. We do not agree.

The *Heinemann Case* may be distinguished. In that case the cost of an improved sewerage plant was defrayed by sewerage-service charges which were based upon a classification of charges taking into consideration the volume of water, the character of the sewerage, and other factors set forth in sec. 66.076 (5), Stats. The plan of financing the cost of improvement was based on the use of the improvement and was permitted by sec. 66.076 (1). This section also provides the cost of such a sewerage improvement might be financed in whole or in part from the general fund, from taxation, special assessments, and other methods. While the opinion in the *Heinemann Case* referred to the sewerage-service charge as a special assessment, the statute specifically refers to both special assessments and sewerage-service charges as different methods of financing. A service charge based on use to finance the cost of the improvement is not the type or in nature the same as a special assessment based on enhanced value of property, which was used in this case. See *Williams v. Madison, supra.* The defendant could not defray the cost of the improvement in the waterworks sys-

tem by a water-service charge or rental as such charges constitute part of its general fund and their purpose is restricted to the cost of operation and maintenance of the waterworks system. Sec. 60.306 (4).

The value of the plaintiffs' property is enhanced by the existence of the elevated water tank. The assessment was not conditioned upon actual use and *Heinemann* has no application. The actual use of the improvement by the laying of mains in the street or adjacent to the plaintiffs' property and by the connections thereto will result in an additional benefit to the plaintiffs' property. The time when this benefit will accrue is within the reasonable control of the plaintiffs.

*By the Court.*—That part of the judgment holding the assessments valid is affirmed; that part of the judgment holding the special assessments invalid is reversed.

BEILFUSS, J., took no part.