ATKINS and another, d/b/a ATKINS & WAHLBERG, Respondents, v. CITY OF GLENDALE, Appellant.*

*No. 470. Argued February 4, 1975.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 190.)

[19] *Cf. Wirtz v. Healy* (D. C. Ill. 1964), 227 Fed. Supp. 123.
* Motion for rehearing denied, with costs, on May 6, 1975.

46

For the appellant there were briefs and oral argument by *George D. Prentice,* Glendale city attorney.

For the respondent there was a brief by *Wickert & Fuhrman,* attorneys, and *Charles Saggio* of counsel, all of Milwaukee, and oral argument by *Harold H. Fuhrman* and *Mr. Saggio.*

BEILFUSS, J. The issues before the court are:

1. May the city, by way of special assessment, require the property owners to pay not only the costs of the installation of new water mains and appurtenances, but also of pre-existing water supply facilities previously paid for by the city?

2. Is this action in reality an appeal under the provisions of sec. 66.60, Stats., and therefore barred for failure of timely commencement pursuant to sub. (12) (a) and (e) and of timely payment pursuant to sub. (12) (f)?

The appellant-city contends that the $9 per frontage foot assessment was intended not only to defray the cost of installation of the new water mains and appurtenances, but also to cover a portion of the cost of water transmission mains, appurtenances and other water supply facilities previously constructed and paid for by the city located outside of plaintiffs-respondents' land, but necessary to furnish water to the mains located in their land.

As authority for the proposition that an assessing authority may assess to pay for previously constructed and paid for improvements, the city relies on three cases: *Jordan v. Menomonee Falls* (1965), 28 Wis. 2d 608, 137 N. W. 2d 442; *Zastrow v. Brown Deer* (1960), 9 Wis. 2d 100, 100 N. W. 2d 359; and *Milwaukee v. Taylor* (1938), 229 Wis. 328, 282 N. W. 448.

In *Jordan*, this court considered the validity of a village ordinance requiring as a prerequisite to platting that the subdivider, " '. . . in order that the cost of providing the public school, park, and recreation sites and facilities necessary to serve the additional families brought into the community by subdivision development may be most equitably apportioned . . .' " dedicate an amount of land of a total value equal to $200 per residential lot created by the subdivision or cash in lieu thereof. This court upheld the ordinance as a valid exercise of authority pursuant to sec. 236.45, Stats.

The city contends that if a municipality may lawfully require a subdivider to pay a sum of money or dedicate lands for the purposes as set out in this case for parks, it certainly may require the subdivider to pay for water mains and appurtenances as set forth in the subdivision control ordinance.

While this reasoning may be logical, the *Jordan Case* is inapposite because it deals exclusively with ch. 236, Stats., relating to the platting of land and raises no question concerning special assessments.

More pertinent to the case at bar are *Zastrow* and *Milwaukee v. Taylor, supra.* In *Zastrow,* at page 108, this court stated:

"The village could require as a condition of its approval of a plat that the subdivider make and install any public improvements reasonably necessary, including a water system, and it could require as a condition for accepting the dedication that the designated facilities previously constructed and provided be without cost to the village, and that such facilities be according to the village's specifications and under its inspection, including water mains and laterals."

In *Milwaukee v. Taylor, supra,* pages 343, 344, the court stated:

"If the city has the power to levy a special assessment . . . we perceive no constitutional objection to including in the special assessment of benefits the amounts paid for property whether the property was acquired before or after the assessment is levied, provided it is a part of an integrated reasonable plan of public improvement and is a proper and equitable charge against the property assessed."

Further, as stated in *Duncan Development Corp. v. Crestview Sanitary Dist.* (1964), 22 Wis. 2d 258, 265, 125 N. W. 2d 617, a case not cited by either party:

". . . Traditionally, improvements such as water mains or sewer mains installed only on certain streets call for special assessments only against the abutting

property, but it does not follow that a central improvement benefiting all the properties in a town sanitary district in different degrees cannot also be financed by special assessments."

Taken together, these cases tend to support the proposition that the city could include in the assessment a part of the cost of the pre-existing water facilities and that such cost constitutes an "indirect cost" of the improvement within the meaning of sec. 66.60 (5), Stats.

We believe, however, that the real question is not whether the city could have assessed for pre-existing improvements, but rather whether it in fact did so, or whether the assessment was merely the result of an inaccurate estimated cost of construction. We agree with the trial court the latter is the case.

The "Agreement" between the parties makes reference only to the "installation" of water mains and appurtenances, and makes no reference to pre-existing improvements. Paragraph 2 provides in part:

"2. Said Owners and City agree that the public water mains and appurtenances set forth at Item No. 2 herein shall be installed by the City through a public contract, and that the City shall levy against all the lots in said subdivision, to defray the cost thereof, a special assessment at the rate of Nine Dollars ($9.00) per front foot. . . ."

The preliminary resolution provides:

"1. That in the judgment of said Common Council it is expedient and necessary . . . that the following named improvements be made in that portion of the following named streets:

"The installation of water mains and appurtenances in Wayside Estates Subdivision and in those streets immediately adjacent and abutting North Redwood Drive between W. Juniper Lane and a point approximately 250 feet north of W. Juniper Lane.

"2. Therefore the Common Council declares its intention to exercise its powers to levy special assessments

under Section 66.60, Wisconsin Statutes, which will not exceed the cost of the work for the above-named purposes on the above-named streets . . . ."

The final resolution makes specific reference to the preliminary resolution and provides:

". . . that the improvement of the aforesaid streets in the manner set forth in the caption hereof be carried out . . . and that payment be made as therein provided by assessing the cost of said improvement to the abutting property . . . ."

The caption of the resolution provides in part:

"In the Matter of the installation of water mains and appurtenances in Wayside Estates Subdivision. . . ."

The agreement and the resolutions refer only to installation of water mains and laterals to be installed in the new subdivision and makes no reference to any pre-existing facilities.

Sec. 66.60 (11), Stats., provides:

"If the cost of the project shall be less than the special assessments levied, the governing body, without notice or hearing, shall reduce each special assessment proportionately and where any assessments or instalments thereof have been paid the excess over cost shall be applied to reduce succeeding unpaid instalments, where the property owner has elected to pay in instalments, or refunded to the property owner."

We believe the plaintiffs-owners should have been able to collect the excess of the amount paid over the cost of the installation and permitted incidental costs provided they followed the statutory procedure set forth in sec. 66.60, Stats.

The trial court, in its memorandum opinion, did not discuss the statutory procedural problems raised by this issue. The plaintiffs-respondents base their claim for reimbursement on 'sec. 66.60 (11), Stats., as set forth above.

Sec. 66.60 (12) (a), Stats., provides in part:

"If any person having an interest in any parcel of land affected by any determination of the governing body, pursuant to sub. (8) (c), (10) or (11), feels himself aggrieved thereby, he may, within 90 days [40 days under the then-current statute] after the date of the notice or of the publication of the final resolution . . . appeal therefrom to the circuit court . . . ."

Sec. 66.60 (12) (e), Stats., provides in part:

"An appeal under this subsection shall be the sole remedy of any person aggrieved by a determination of the governing body . . . and shall raise any question of law or fact, stated in the notice of appeal, involving the making of such improvement, the assessment of benefits or the award of damages or the levy of any special assessment therefor. . . ."

On its face, sub. (12) (e) clearly purports to be the exclusive remedy. As pointed out by plaintiffs-respondents, however, the combination of subs. (11) and (12) can result in a total denial of the right to reimbursement before that right arises. Such result can obtain where, as here, the resolution adopting the assessment plan is passed and published more than forty days (now ninety days) before a bid is accepted. In such case, the landowner will be effectively foreclosed from even asserting his right to reimbursement.

We doubt, without so holding, that these two sections can be construed in such a manner without raising a constitutional due process issue. We do not express an opinion as to this problem for the reasons the parties have not raised it and the plaintiffs-respondents have fatally failed to follow the procedural provisions of the statute in another respect.

Sub. (12) (f) of sec. 66.60, Stats., provides that as a condition to the maintenance of an appeal under sub. (12), "any assessment appealed from shall be paid as and when the same or any instalments thereof become due

and payable, and upon default in making such payment, any such appeal shall be dismissed."

The final resolution and the original agreement both call for payment "on or before February 28, 1971."

The plaintiffs-respondents assert that timely payment was made "by paying the city tax portion before the end of February while the county portion was paid before August." The tax receipt bears the following language:

"NOTICE TO TAXPAYER

"Notice to taxpayer—Pay to your Local Treasurer First Installment Payment—Pay One-Half of 'Total Tax' on/or before January 31, 1971. The balance remaining after February 28, 1971, is Payable to County Treas., Courthouse, on/or before July 31, 1971. Full Payment— Pay Total Tax on/or before February 28, 1971.

"Taxes not paid on time are collected with interest at a rate of .008 per month from January 1, 1971, by County Treas., Courthouse."

The language of the resolution and the agreement, however, is unmistakably clear. Payment was not timely made. The plaintiffs-respondents did not comply with sec. 66.60 (12) (f), Stats., and under the terms of the statute the appeal to the circuit court must be dismissed.[1]

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.

[1] *See Singer Brothers, Inc. v. Glendale* (1967), 33 Wis. 2d 579, 148 N. W. 2d 100.