PARK AVENUE PLAZA, Scannell Family, Ltd.,
PJL Group, Khalid Ahmed, JRJ Properties, LLC,
Mequon Motel Investors, Telahc, Inc., Stern Real
Estate, LLC, Peter Plautz, Zimon, LLC, Wladys
Pawelec, Allna Pawelec, and Holdings, LLC,
Plaintiffs-Appellants,

v.

CITY OF MEQUON, Defendant-Respondent.

Court of Appeals

*No. 2006AP2339. Submitted on briefs October 4, 2007.
—Decided February 20, 2008.*

2008 WI App 39

(Also reported in 747 N.W.2d 703.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea H. Roschke* of *Michael Best & Friedrich, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Raymond J. Pollen* and *Amy J. Doyle* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J. Park Avenue Plaza, together with

other commercial property owners along Port Washington Road (Park Avenue), appeals from a summary judgment affirming special assessments levied by the City of Mequon after public improvement work was completed. Park Avenue also appeals from the court's order denying a motion for reconsideration. Park Avenue contends the circuit court erred when it concluded that the City complied with the statutory procedures set forth in Wis. Stat. § 66.0703 (2005–06),[1] governing a municipality's power to levy and collect special assessments. It also challenges the court's determination that special benefits were conferred on commercial property owners and that the special assessments were made on a reasonable basis; specifically, Park Avenue contests the exclusion of residential property owners from any obligation under the assessment. Park Avenue asserts that the court should have reconsidered its ruling in light of the supreme court's decision in *Steinbach v. Green Lake Sanitary District*, 2006 WI 63, 291 Wis. 2d 11, 715 N.W.2d 195. We disagree and affirm.

## BACKGROUND

¶ 2. The events underlying this appeal span several years and two phases of public improvements along Port Washington Road in the City of Mequon. The improvements included adding new lanes and a median, new lighting, landscaping, sidewalks, curbs, and storm sewer. The first phase began in 1991 along the northern portion of Port Washington, and a special assessment occurred shortly thereafter. Improvements along the southern portion of Port Washington, south of Mequon

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version.

Road, took place between the spring of 2000 and fall of 2001. This second phase of improvements is the subject of this lawsuit.

¶ 3. On November 13, 1996, the City held a public informational meeting to present the project and hold an informal discussion with project staff. There, the Mequon City Engineer informed attendees that special assessments for the work on the southern portion of Port Washington Road would "probably" be accomplished using the same method as that used for the northern portion. Property owners asked questions about sidewalks, medians, ditch drainage, and a nearby berm.

¶ 4. The formal statutory process to levy the assessments began in September 2001, when the City of Mequon Common Council adopted Preliminary Resolution No. 2291, stating its intent to levy a special assessment to "recover all or part of the City's local share of the Port Washington Road project expenditures." The special assessment was delayed, however, because the City was waiting for the Wisconsin Department of Transportation to determine the final project costs. Funds to cover the road work came from different sources, including the City and the County.

¶ 5. On November 10, 2003, the city engineer submitted his report in accordance with Preliminary Resolution No. 2291. The report calculated the assessable amount of the local share of costs to be $528,657. Two days later, the City issued a notice of public hearing to be held on December 9, 2003; however, the matter was removed from the hearing agenda due to "technical issues that need further investigation and clarification."

¶ 6. The process began anew on February 10, 2004, when the common council approved Preliminary Resolution No. 2490 to levy a special assessment under their police power pursuant to WIS. STAT. § 66.0703. As

445

required, the city engineer's report was filed on July 21, 2004, and the matter was set for a noticed public hearing. In the interim, the City continued discussions and the proposed assessment was eventually reduced from approximately $528,000 to approximately $490,000.

¶ 7. The public hearing took place on August 10, 2004; eleven people took the opportunity to speak against the proposed assessment and twelve others registered their opposition without further comment. Final Resolution No. 2522 to levy the assessment was ultimately approved on October 15, 2004.

¶ 8. The City employed a trip generation formula, which apportioned the assessment in accordance with the number of vehicle trips each property was projected to generate. The City limited the assessment to the commercial properties along Port Washington Road and declined to levy against the residential properties.

¶ 9. On January 13, 2005, Park Avenue filed an appeal from the special assessment. In its motion for summary judgment, Park Avenue asserted that the City had not complied with statutory procedures under WIS. STAT. § 66.0703, and that it was unreasonable to exclude residential property owners from the special assessment. After reviewing the briefs and hearing oral arguments from the parties, the circuit court held that the City had complied with the statutory requirements, that commercial property owners had received special benefits from the road improvements, and that the special assessments were properly allocated using a reasonable methodology. On June 2, 2006, the court issued a decision denying Park Avenue's motion for summary judgment. Shortly thereafter, the court followed with a judgment, dismissing all of Park Avenue's claims with prejudice.

¶ 10. On October 6, 2006, Park Avenue filed a motion for relief from judgment on grounds that the supreme court's recent decision, *Steinbach v. Green Lake Sanitary District*, 2006 WI 63, 291 Wis. 2d 11, 715 N.W.2d 195, required a different outcome. The court determined that *Steinbach* did not change the law and refused to provide Park Avenue with relief from the judgment. Park Avenue appeals.

## DISCUSSION

¶ 11. Park Avenue presents three issues for our review: (1) whether the special assessment comported with statutory requirements under WIS. STAT. § 66.0703, (2) whether the assessed properties received special benefits, and (3) whether the assessments met the reasonableness test where all residential properties were excluded from the assessment. Following our initial review of the appeal, we ordered supplemental briefs on two additional issues. First, we inquired as to whether the circuit court's denial of Park Avenue's summary judgment motion fully disposed of the § 66.0703(12)(a) appeal. Also, we asked whether the denial of the summary judgment motion satisfied the disposition mandate under § 66.0703(12)(d). Both parties agreed, and we accept, that the decision and order below represented a final disposition of the case and conformed to the statutory requirements if not on its face, at least in its function. Accordingly, we turn to the merits of Park Avenue's appeal.

### *The Statutory Procedure*

¶ 12. Park Avenue contends that the City pursued the public improvement project and the assessments in reverse order: the City made the improvements before

embarking on the statutory process. For support, Park Avenue directs us to Wis. Stat. § 66.0703, which provides the procedures a municipality must follow when levying a special assessment. Under the statute, a municipality planning to levy a special assessment must, "[b]efore the exercise of any [special assessment] powers conferred by this section . . . declare by preliminary resolution its intention to exercise the powers for a stated municipal purpose." Sec. 66.0703(4). Because Park Avenue argues the anticipatory nature of the precise language of the statute, we repeat the relevant portion here:

> The resolution shall describe generally the contemplated purpose, the limits of the proposed assessment district, the number of installments in which the special assessments may be paid, or that the number of installments will be determined at the hearing required under sub. (7), and direct the proper municipal officer . . . to make a report on the proposal.

*Id.* In addition, the statute provides that the report must include preliminary or final plans, an estimate of the entire cost of the proposed project, and, where the special assessment constitutes an exercise of police power, a "statement that the property against which the assessments are proposed is benefited." Sec. 66.0703(5). Park Avenue notes that "the improvements were constructed between April, 2000, and September, 2001. No formal special assessment procedures were undertaken before September 20, 2001" and the process again was delayed for over two years as costs were reevaluated.

¶ 13. Park Avenue argues that the language of the statute reveals the legislature's intent to start the assessment process before the actual work begins. It notes, for example, that the preliminary resolution should describe the "contemplated" purpose of the

project. *See* Wis. Stat. § 66.0703(4). Further, it states that the report should contain an "estimate" of the cost of the "proposed" work. *See* § 66.0703(5)(b). Also, the statute states, "When the governing body *finally determines to proceed* with the work . . . it shall approve the plans and specifications and adopt a resolution *directing that the work or improvement be carried out* and paid for in accordance with the final report as finally approved." Sec. 66.0703(8)(c) (emphasis added). Finally, "[w]hen the final resolution·is published, all work or improvements described in the resolution . . . and assessments arising from the resolution *are then authorized and made,* subject to the right of appeal." Sec. 66.0703(8)(e) (emphasis added).

¶ 14. The City agrees that the statutory steps in the process are to adopt a preliminary resolution, prepare a report, hold a public meeting, and adopt a final resolution. *See generally* Wis. Stat. § 66.0703(4)-(8). The City asserts that it did comply with each of the statutory requirements and, further, that the statute does not preclude the improvement project from beginning before the assessment process is completed. The City directs us to *City of Milwaukee v. Taylor,* 229 Wis. 328, 282 N.W. 448 (1938), for support. The *Taylor* court explained, "We perceive no ground upon which the taxpayer can legitimately object if he is assessed for special benefits which have been conferred upon him, although the benefit may have been conferred prior to the making of the assessment." *Id.* at 346–47. Furthermore, the legislature provided municipalities with the power to reopen and reconsider an assessment under § 66.0703(10), including any assessment that may be void or invalid. Thus, the City argues, the statute authorizes an assessment process that would take place after the improvement work is completed.

¶ 15. We do not read the statute to require the special assessment process be completed before any work is done. Our supreme court has said that there is no constitutional obstacle to a post completion special assessment:

> If the city has the power to levy a special assessment . . . we perceive no constitutional objection to including in the special assessment of benefits the amounts paid for property whether the property was acquired before or after the assessment is levied, provided it is a part of an integrated reasonable plan of public improvement and is a proper and equitable charge against the property assessed.

*Atkins v. City of Glendale*, 67 Wis. 2d 43, 50, 226 N.W.2d 190 (1975) (citation omitted). We have no reason to conclude that, because the legislature did not expressly grant municipalities the authority to levy special assessments after the completion of public work, it intended to prohibit such a procedure. Because there is no constitutional right to be heard on the necessity of a public improvement, the property owner's rights are protected when he or she is permitted the opportunity to be heard on the assessment. *See Utley v. City of St. Petersburg, Fla.*, 292 U.S. 106, 109 (1934) (property owners do not have a constitutional right to be heard in opposition to a public project which may end in an assessment).

¶ 16. Particularly in the situation presented, the City's ability to estimate costs was affected by the Wisconsin DOT's role in the planning and implementation of the improvements. The DOT was involved in planning the project, obtaining the bids, contracting with companies and monitoring the work. The City, responsible for only a portion of the costs, would have

needed a crystal ball to anticipate the timing and amount of its ultimate contribution to this project. Moreover, the City did properly notice and hold several informational meetings prior to passing the final resolution approving the special assessment. Because the City properly accomplished each step under WIS. STAT. § 66.0703(4)-(8) in its special assessment and because the statute does not prohibit post improvement assessments, we ascertain no grounds for reversal here.

*The Question of Special Benefits*

¶ 17. WISCONSIN STAT. § 66.0703(1)(a) states that a municipality may "levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement." Park Avenue contends that its property did not receive the required "special benefits" referred to in the statute. A special benefit has the effect of furnishing an uncommon advantage to a property. *See Goodger v. City of Delavan*, 134 Wis. 2d 348, 352, 396 N.W.2d 778 (Ct. App. 1986). An uncommon advantage is one that differs in kind, rather than in degree, from the benefits enjoyed by the general public. *Id.*

¶ 18. We begin by recalling that this matter arises from a summary judgment. We review summary judgment decisions independently, using the same methodology as the circuit court. *Rusk v. City of Milwaukee*, 2007 WI App 7, ¶ 8, 298 Wis. 2d 407, 727 N.W.2d 358 (2006), *review denied*, 2007 WI 61, 300 Wis. 2d 193, 732 N.W.2d 859. We will affirm a summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

451

¶ 19. Public improvements usually fall into one of two categories: general or local. *Genrich v. City of Rice Lake*, 2003 WI App 255, ¶ 8, 268 Wis. 2d 233, 673 N.W.2d 361. A general improvement confers a general benefit, one that is substantially equal amongst the properties of the whole community or the public at large. *Id.* A local improvement, although incidentally beneficial to the whole community, is primarily for the "accommodation and convenience of inhabitants in a particular locality" and confers special benefits to their properties. *Id.*

¶ 20. Because special assessments can only be levied for local improvements, before the propriety of a special assessment can be addressed the circuit court must examine whether the improvement was local, that is, whether the purpose was to accommodate particular property owners and confer a special benefit. *Id.*, ¶ 9. Whether a special benefit was conferred is a question of fact. *Id.*, ¶¶ 9, 12. *See also Steinbach*, 291 Wis. 2d 11, ¶ 10 (the circuit court's determination that assessed property was benefited is a question of fact); *Duncan Dev. Corp. v. Crestview Sanitary Dist.*, 22 Wis. 2d 258, 265, 125 N.W.2d 617 (1964) (It is "difficult to classify improvements abstractly as local or general . . . . What may be called a local improvement under one set of facts may well constitute a general improvement in the context of different facts.").

¶ 21. The question here is whether the circuit court properly employed a summary judgment methodology to conclude that the improvements to Port Washington Road conferred a special benefit to Park Avenue. More specifically, the question is whether the court

452

properly concluded that no genuine issue of fact regarding special benefits existed.

¶ 22. The City directs us to *Molbreak v. Village of Shorewood Hills*, 66 Wis. 2d 687, 225 N.W.2d 894 (1975), where the court held that commercial property received a special benefit from improved traffic safety and aesthetic improvements to the adjacent public road. *Id.* at 699. There, the court held that the property owners did not adequately rebut the "presumption of the validity of the assessment." *Id.* at 698. Likewise, the City asserts, the record here shows that improvements conferred a special benefit on commercial properties that depend on Port Washington Road for access; specifically, an "increased level of future service to the area" and "improved traffic flow and reduced traffic congestion."

¶ 23. Park Avenue counters that the purpose of the roadwork was to minimize delays at traffic lights and improve traffic flow, which benefits the whole community and is no different from the benefit conferred on the public at large. The City responds that the community may benefit from the improvements, but that the kind of benefit enjoyed by Park Avenue differs from that enjoyed by the general public. *See Goodger*, 134 Wis. 2d at 352 (a special benefit differs in kind, rather than in degree, from the benefit to the general public). A public improvement may result in both general and special benefits. *Molbreak*, 66 Wis. 2d at 699.

¶ 24. Although the question of special benefits is material to the resolution of the case, Park Avenue must show the existence of a genuine dispute. The simple existence of a factual dispute between the par-

ties will not defeat summary judgment if the factual issue is not genuine. *Strasser v. Transtech Mobile Fleet Serv. Inc.*, 2000 WI 87, ¶ 32, 236 Wis. 2d 435, 613 N.W.2d 142. "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party challenging summary judgment must present specific facts showing that a genuine issue exists for trial; "[i]t is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based upon personal knowledge." *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999).

¶ 25. Park Avenue points to the City's report, noting that the need for the improvements grew from a need for better traffic flow in the area rather than a plan to benefit local businesses. Park Avenue submits that "minimizing delays at traffic lights on a major arterial street benefits the community at large, but does not specifically benefit any single area of the community . . . . Improved traffic flow does not confer on [commercial property owners] a benefit that differs in 'kind' from the benefit to all other members of the motoring public . . . ."

¶ 26. Park Avenue emphasizes that the City intended to benefit businesses as well as residents. It directs us to the City's report, which states that although the benefit is, "to a large extent, capitalized as higher property value, it also provides *direct benefits to businesses and residents* served by the improvements." (Emphasis added.) Park Avenue ignores other record facts that support summary judgment. For example, in addition to improved traffic flow, the City identified benefits to the commercial properties along Port Wash-

ington Road: "These benefits may include an increase in customer trips to retail centers, shorter travel times for employees, higher occupancy levels and possibly higher rental rates for offices and retail, and more timely deliveries and lower transportation costs to light industrial centers." Certainly, these benefits are different in kind than those enjoyed by the public at large. Park Avenue presents nothing to rebut the City's conclusion that commercial properties received special benefits. No genuine issue of material fact exists; therefore, summary judgment was proper.

### *The Question of Reasonableness*

¶ 27. The amount of the assessment, if levied under the police powers of the municipality, must be "upon a reasonable basis as determined by the governing body." Wis. Stat. § 66.0703(1)(b). Whether a special assessment made pursuant to police powers is reasonable is a question of law. *Steinbach*, 291 Wis. 2d 11, ¶ 11. There is no single formula or methodology for apportioning assessments; rather, "[t]he facts of the particular situation must govern the determination of whether the assessment is made 'upon a reasonable basis.' " *Peterson v. City of New Berlin*, 154 Wis. 2d 365, 374, 453 N.W.2d 177 (Ct. App. 1990). For purposes of judicial review, the law presumes the municipality proceeded reasonably in making the assessment and the challenger bears the burden of establishing otherwise by prima facie evidence. *Steinbach*, 291 Wis. 2d 11, ¶ 11.

¶ 28. Park Avenue reiterates its position that it was unreasonable for the City to exclude residential properties from the special assessment. It argues that

the residential properties enjoy the benefit of improved traffic flow and therefore the residential properties are comparable to the commercial properties for purposes of this assessment. In particular, Park Avenue points to the installment of sidewalks along Port Washington Road and that this "certainly benefited residential properties more than commercial properties." It raises the City's own report, which states that the "most tangible" benefit to area properties was a gain or retention of property value and the second "major benefit" was increased accessibility. Excluding residential property that clearly benefited from the improvements, it argues, is unfair.

¶ 29. Park Avenue directs us to our supreme court's recent decision in *Steinbach* for support. In *Steinbach*, the court addressed the question of reasonableness in terms of a two-part test. *Id.*, ¶ 23.[2] Applying the proper test here, we conclude that Park Avenue has not overcome the presumption of reasonableness.

■

¶ 30. First, we conclude that the evidence supports a uniform assessment. Uniformity means that the

_____

[2] First, the *Steinbach* court observed that the special assessment was not uniform because condominiums were not treated the same as comparable property with multiple habitable units. *Steinbach v. Green Lake Sanitary Dist.*, 2006 WI 63, ¶ 26, 291 Wis. 2d 11, 715 N.W.2d 195. Second, the court acknowledged, but did not consider, the question of uniqueness because the assessment failed the uniformity test. *Id.*, ¶ 26 n.13. Although Park Avenue hails the *Steinbach* analysis as an expansion of the reasonableness inquiry, the test employed in *Steinbach* is not new. *See id.*, ¶ 23 (the two-part uniformity/uniqueness test for reasonableness was applied in *Genrich v. City of Rice Lake*, 2003 WI App 255, 268 Wis. 2d 233, 673 N.W.2d 361 and *Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 522 N.W.2d 277 (Ct. App. 1994)).

assessment is fairly and equitably apportioned among property owners in comparable situations. *Id.* As the City's report indicates, the City used the trip generation methodology to apportion costs; more specifically, the City based the assessment on " 'theoretical' vehicle trips per day that a business generates by business zoning or category." The rates are based on the trip generation manual of the Institute of Traffic Engineers, with development-specific modifications according to the first phase of the Port Washington Road improvements. At the summary judgment hearing, Park Avenue conceded this was an accepted methodology. Nothing in the record persuades us that the assessment treated comparable properties differently. Park Avenue points to local apartment buildings that were excluded from the assessment, but has not demonstrated that those entities were comparable to the commercial properties included in the assessment. Conclusory assertions[3] will not defeat the presumption of reasonableness that we must accord the City's special assessment.

¶ 31. The second part of the test for reasonableness is the rule of uniqueness. Assessments must not affect unique properties in a disproportionate way. *Id.* Here, Park Avenue makes no argument on the issue of uniqueness and, accordingly, we do not take it up other than to say that there is nothing in the record to

---

[3] Park Avenue's argument that multi-unit residential properties benefit from the street improvements "and benefit more than the commercial properties from the sidewalks" is not supported by any reference to the record. Likewise, its attempt to compare a motel with an apartment building to prove a lack of uniformity is unsupported by any legal argument. Park Avenue's claims are conclusory and undeveloped and do not rise to the level of prima facie evidence.

indicate that the commercial properties included in the assessment are unique and somehow unduly burdened by the assessment.

## CONCLUSION

¶ 32. We hold that the City's special assessment, levied under its police powers, complied with the procedural requirements of Wis. Stat. § 66.0703, conferred special benefits on the appellants, and was reasonably apportioned. Having encountered no reversible error, we affirm the judgment and order of the circuit court.

*By the Court.*—Judgment and order affirmed.