William L. GENRICH and Frances L. Genrich,
Plaintiffs-Appellants,

v.

CITY OF RICE LAKE, Defendant-Respondent.

Court of Appeals

*No. 03–0597. Submitted on briefs October 6, 2003.—
Decided November 11, 2003.*

2003 WI App 255

(Also reported in 673 N.W.2d 361.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Frederick W. Fischer* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The City of Rice Lake levied a $44,612.25 special assessment against property owned by William and Frances Genrich. The assessment was for improvements the City made that included paving a street and installing sidewalks, curbs, gutters, and

water and storm sewers. The Genrichs challenged the assessment and the circuit court granted summary judgment to the City. The Genrichs appeal, arguing (1) the circuit court must first determine whether the nature of improvements is general or local before it considers the propriety of the special assessment, (2) the City's purpose for making the improvement determines its nature, and (3) there are genuine issues of material fact regarding the City's purpose for constructing the improvement. In the alternative, even if the improvement is local, they argue that the assessment was not made on a reasonable basis because their property did not receive any benefits.

¶ 2. We agree with the Genrichs that the initial question to be resolved is what type of improvement was made. However, we conclude that the City's purpose for making the improvements is not solely determinative on this question, but rather is a relevant factor the circuit court must consider in light of the benefits the improvements confer on the property. Because the inquiry into the nature of an improvement presents a question of fact, and because genuine issues of material fact exist regarding the City's purpose for making the improvements and whether the Genrichs' property received any special benefits from them, summary judgment was improper. The City is, however, entitled to partial summary judgment with regard to the special assessment for the value of the sidewalk improvement because benefits need not accrue to the property in order to support the assessment's levy. On remand, if the circuit court decides the other improvements are local, it must then determine whether the special assessment is reasonable based on uniformity and uniqueness concerns. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

### BACKGROUND

¶ 3. In 1997, the Genrichs purchased a two-acre parcel of land in the City of Rice Lake located on Kern Avenue off a T-intersection with South Street.[1] The property included two structures, a residence and an airplane hangar, which were not connected to water or sewer utilities, and a private roadway that spanned the length of the property and provided access to Kern Avenue. The Genrichs' property was zoned residential at the time of purchase but was subsequently rezoned commercial. East of the Genrichs' property is a public park, Moon Lake Park. The park is comprised of several soccer fields and restroom facilities. The City created the park in 1998 from an abandoned airport, and, like the Genrichs' property, this land was not serviced by public utilities. Through a series of land transactions involving properties surrounding the park, the City effectively, though inadvertently, landlocked the park from vehicular traffic.

¶ 4. Faced with several options to provide access to the park's west property line, the City opted to purchase a parcel of land north of the Genrichs' property to construct an extension and improvement of South Street. In the end, the project consisted of a 528–foot paved extension of South Street with curbs, gutters, and sidewalks, along with the installation of public water utilities including sanitary and storm sewers to serve the park and the surrounding properties. In total, six properties were affected by these improvements. By use of its police power, the City levied special assessments against these properties under Wis.

---

[1] The portion of Kern Avenue south of the intersection apparently is dedicated as Kern Avenue and is paved, but it is not fully improved.

STAT. § 66.0703.[2] Using the "front-foot" method for valuation, the City assessed the Genrichs' property $44,612.25.

¶ 5. The Genrichs subdivided their land into two parcels, purportedly to help pay for the special assessment, and appealed the levy to the circuit court pursuant to WIS. STAT. § 66.0703(12).[3] The court granted summary judgment to the City. It concluded the Genrichs' property was benefited by the improvements, both in its current use as a residence and in its potential future use as commercial property, and that the method used to value the special assessments, the front-foot method, was per se reasonable. The Genrichs appeal.

---

[2] WISCONSIN STAT. § 66.0703 states, in pertinent part:

(1) (a) Except as provided in s. 66.0721, as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments.

(b) The amount assessed against any property for any work or improvement which does not represent an exercise of the police power may not exceed the value of the benefits accruing to the property. If an assessment represents an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] WISCONSIN STAT. § 66.0703(12)(a) provides in part:

A person having an interest in a parcel of land affected by a determination of the governing body . . . may, within 90 days after the date of the notice or of the publication of the final resolution . . . appeal the determination to the circuit court of the county in which the property is located.

## DISCUSSION

■■■

¶ 6. When reviewing a summary judgment, we perform the same function as the trial court, making our review de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Summary judgment is a drastic remedy; therefore, the moving party must clearly be entitled to judgment as a matter of law. *Village of Fontana-On-Geneva Lake v. Hoag*, 57 Wis. 2d 209, 214, 203 N.W.2d 680 (1973). We view the facts in the light most favorable to the nonmoving party, *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986), and "[a]ny doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party." *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 546, 535 N.W.2d 65 (Ct. App. 1995).

■■

¶ 7. The Genrichs argue that the trial court erred by granting summary judgment to the City because it did not first consider whether the nature of the improvements was general or local. Because special assessments can only be levied for a local improvement, they argue the circuit court erred by beginning its analysis with the correctness of the special assessment. We agree.

242

¶ 8. Public improvements usually fall into one of two categories: general or local. *Duncan Develop. Corp. v. Crestview San. Dist.*, 22 Wis. 2d 258, 264, 125 N.W.2d 617 (1964). A general improvement is one that confers a general benefit, that is, a "substantially equal benefit and advantage" to the property of the whole community, or benefits the public at large. *Id.* In contrast, a local improvement, although incidentally beneficial to the public at large, is primarily made for the accommodation and convenience of inhabitants in a particular locality and confers "special benefits" to their properties. *Id.* The distinction between the two kinds of public improvements holds significant consequences for property owners. *Id.* at 264–65. General improvements are funded by general taxes and must comply with the rule of uniformity, whereas local improvements may be financed by special assessments levied against individual properties and are not limited by the rule of uniformity. *Id.* at 264.

¶ 9. Because special assessments can only be levied for local improvements, before the propriety of a special assessment can be addressed the circuit court must initially examine whether the improvement is local. This examination presents a question of fact. *See Duncan*, 22 Wis. 2d at 265 (It is "difficult to classify improvement abstractly as local or general. ... What may be called a local improvement under one set of facts may well constitute a general improvement in the context of different facts."); *see also Preloznik v. City of Madison*, 113 Wis. 2d 112, 118, 334 N.W.2d 580 (Ct. App. 1983) (existence of benefit presents question of fact); 14 McQuillin Mun. Corp. § 38.11 at 83 (3rd ed. 1998) ("[W]hether the facts in a particular case show

243

the improvement to be local or general is a question of fact determinable from the conditions and circumstances.").

¶ 10. The next issue concerns how the circuit court should properly resolve this factual determination. The Genrichs seem to argue the City's purpose for initiating the improvements will determine the nature of the improvement because this purpose will significantly dictate the improvements' effects. The City claims its purpose is not germane. Instead, the City suggests the central query should be on the benefits conferred by the improvements. We disagree with both parties. Taking the middle path, we conclude the City's purpose for making the improvements is relevant to resolving the nature of the improvement, but not determinative because the court must also consider the benefits the property receives.

¶ 11. Purpose is relevant to determining the nature of the improvement because of the manner in which local improvement is defined. Again, a local improvement is a type of improvement primarily made for the accommodation and convenience for inhabitants of a particular locality that grants special benefits to their property. *Duncan*, 22 Wis. 2d at 264. The phrase "primarily made" connotes that consideration be given to the City's motivations for making the improvements. In so considering, the circuit court must decide what the primary purpose for the improvements was and who the primary objects of that purpose were. Specifically, the City's purpose for initiating improvements must be for reasons of accommodation and convenience (the "what" question), and the object of the purpose must be primarily for the people in a particular locality

(the "who" question) for an improvement to fall within the local improvement category. *See id.*

¶ 12. Our conclusion finds support in McQUILLIN ON MUNICIPAL CORPORATIONS, where it states: "[I]f [the improvement's] primary purpose and effect are to benefit the public, it is not a local improvement." 14 McQUILLIN, *supra,* § 38.11. While this highlights purpose as a relevant and necessary consideration in the examination, it also confirms, contrary to what the Genrichs suggest, that purpose alone is not conclusive. The court must also consider the effect of the improvement by analyzing (1) the type of benefits conferred, and (2) their extent. *Id.* This consideration should bear the greatest weight. *See Duncan,* 22 Wis. 2d at 265.

¶ 13. Turning to the type of benefits, while general improvements grant substantially equal benefits and advantages to the property of the whole community or otherwise benefits the public at large, local improvements confer "special benefits" on property in a particular area. *Id.* at 264. A special benefit has the effect of furnishing an "uncommon advantage" that either increases the services provided to the property or enhances its value.[4] *Goodger v. City of Delavan,* 134 Wis.

---

[4] *Goodger v. City of Delavan,* 134 Wis. 2d 348, 352, 396 N.W.2d 778 (Ct. App. 1986), and *Estate of Wolff v. Weston Town Bd.,* 156 Wis. 2d 588, 598, 457 N.W.2d 510 (Ct. App. 1990), dealt with special benefits in the context of the special assessment statute, WIS. STAT. § 66.0703(2). However, because special assessments can only be levied against properties for local improvements, *Duncan Develop. Corp. v. Crestview San. Dist.,* 22 Wis. 2d 258, 264, 125 N.W.2d 617 (1964), and because local improvements require "special benefits," *id.,* it is sensible to incorporate their interpretation of special benefits here.

2d 348, 352, 396 N.W.2d 778 (Ct. App. 1986); *Duncan*, 22 Wis. 2d at 264–65.

¶ 14. An uncommon advantage is a benefit that differs in kind rather than in degree from those benefits enjoyed by the general public. *Goodger*, 134 Wis. 2d at 352. It has been described as an advantage that "is in addition to that benefit enjoyed by other property owners in the municipality." *Id.* When evaluating an uncommon advantage grounded upon an alleged increase in services, the accrual of the benefits must be "certain." *See Duncan*, 22 Wis. 2d at 267–68; *Wm. H. Heinemann Creameries v. Village of Kewaskum*, 275 Wis. 636, 641, 82 N.W.2d 902 (1957). That is to say, the benefit must not be contingent on unplanned future action by the City. *See Heinemann Creameries*, 275 Wis. at 641. If the uncommon advantage stems from an enhancement in the property's value, the court must view the benefits and their effect in light of the highest and best possible use of the property. *Molbreak v. Village of Shorewood Hills*, 66 Wis. 2d 687, 700, 225 N.W.2d 894 (1975).

¶ 15. The extent of the benefits must be substantial and capable of realization in a reasonable amount of time.[5] *Estate of Wolff v. Weston Town Bd.*, 156 Wis. 2d 588, 598, 457 N.W.2d 510 (Ct. App. 1990). A benefit is

---

[5] *Estate of Wolff* actually states benefits must be substantial, certain, and capable of being realized within a reasonable amount of time. *Id.* at 598. However, *Wolff* relied on *Wm. H. Heinemann Creameries v. Village of Kewaskum*, 275 Wis. 636, 641, 82 N.W.2d 902 (1957), for this proposition. *Heinemann Creameries* was distinguished in *Duncan*. There, the supreme court held that where benefits in the form of enhanced value accrue to property it is not necessary that the benefits be certain, but only that they be substantial and capable of being realized within a reasonable amount of time. *See Duncan*, 22

substantial if it provides more than incidental effects to the property. *See Duncan*, 22 Wis. 2d at 264. Consequently, a local improvement can incidentally grant general benefits to the public at large or the property of the whole community yet still be local, *see id.* at 264–65, while a general improvement may incidentally provide special benefits to particular properties and nevertheless remain general. *See* 14 McQuillin, *supra,* at § 38.11. Finally, the effect of the benefit must be capable of realization in a reasonable amount of time. *Estate of Wolff*, 156 Wis. 2d at 598. However, evidence that the property will not be developed in the foreseeable future, or that there is no present use for the improvement, will not prevent a finding of special benefits. *Soo Line R.R. Co. v. City of Neenah*, 64 Wis. 2d 665, 671–72, 221 N.W.2d 907 (1974).

¶ 16. Applying all of the foregoing principles, and viewing the facts in the light most favorable to the Genrichs, summary judgment was improper. When deciding whether an improvement is general or local, the circuit court must consider the City's purpose for making the improvements. The record contains an inference that the City's purpose was primarily to provide access to the park. In the City's briefing reports, it states "[t]here would seem to be three, primary alternatives for providing street & utility access to Moon Lake Park." The option the City eventually accepted was one described as follows: "Fully improve South Street extended for utility connection and access to Moon Lake Park." This creates an inference that the City's primary purpose for the improvements was not for accommodation and convenience for the surround-

Wis. 2d at 267–68. Accordingly, only those benefits that confer an increase in service must be certain. *Id.* at 268–69.

ing properties. However, in an affidavit the city engineer claims the City's primary motivations for the improvements were twofold. He states the project was undertaken "primarily to serve the adjacent commercially zoned lots and to provide an access and utilities to Moon Lake Park." The opposing inferences create a genuine issue of material fact; summary judgment was improper.

¶ 17. There is also a genuine issue of material fact concerning whether the Genrichs' property received special benefits because of the improvements. The trial court concluded the Genrichs' property was benefited, yet the Genrichs' realtor concluded, in his opinion, that the improvements provided no benefit to this property. He states the property already had vehicular access and possibly already had water utilities, though it was not connected. As a consequence, the improvements conferred a benefit that differs in degree, not in kind, from the rest of the public. *See Goodger*, 134 Wis. 2d at 352. The realtor further opines the improvements may even be detrimental to its value as commercial property. The City argues at length that this affidavit is insufficient to create a genuine issue of material fact because, from the City's point of view, the opinion is suspect. However, our review in light of the summary judgment methodology prevents us from deciding an issue of fact. *See Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). Instead, we "only determine whether a factual issue exists." *Id.* Because the realtor's opinion cuts to the heart of the matter and creates a genuine issue of material fact, summary judgment was inappropriate.

¶ 18. We do agree with the City, however, that it is entitled to partial summary judgment with regard to the special assessment levied for the sidewalks. Sidewalk improvements represent a special case. The Genrichs' property does not have to receive a special benefit in order for the City to levy against it. *See* Wis. Stat. § 66.0907(3)(f);[6] *see also Stehling v. City of Beaver Dam*, 114 Wis. 2d 197, 201, 336 N.W.2d 401 (Ct. App. 1983) (Wisconsin Stat. 66.615(3) (1983) [now renumbered § 66.0907] contains no express requirement of benefits for a special tax for sidewalk construction).

¶ 19. On remand, should the circuit court nevertheless conclude the nature of the other improvements is local, it must then consider the propriety of the special assessment levied on the Genrichs' property

---

[6] Wisconsin Stat. § 66.0907(3)(f) reads:

The board of public works shall keep an accurate account of the expenses of laying, removing and repairing sidewalks in front of each lot or parcel of land, whether the work is done by contract or otherwise, and report the expenses to the comptroller. The comptroller shall annually prepare a statement of the expense incurred in front of each lot or parcel of land and report the amount to the city clerk. The amount charged to each lot or parcel of land shall be entered by the clerk in the tax roll as a special tax against the lot or parcel of land and collected like other taxes upon real estate. The council by resolution or ordinance may provide that the expense incurred may be paid in up to 10 annual installments and the comptroller shall prepare the expense statement to reflect the installment payment schedule. If annual installments for sidewalk expenses are authorized, the city clerk shall charge the amount to each lot or parcel of land and enter it on the tax roll as a special tax against the lot or parcel each year until all installments have been entered, and the amount shall be collected like other taxes upon real estate. The council may provide that the street commissioner or city engineer perform the duties imposed by this section on the board of public works.

pursuant to the City's police power.[7] The special assessment must pass three legislative requirements.[8] WIS. STAT. § 66.0703(1)(a), *but cf. Lac La Belle Golf Club v. Village of Lac La Belle*, 187 Wis. 2d 274, 281, 522 N.W.2d 277 (Ct. App. 1994). First, the assessment must be levied upon property in a limited and determinable area. WIS. STAT. § 66.073(1)(a). Second, it must be levied only for the special benefits conferred on the property. *Id.* Third, if an assessment represents an exercise of the police power, the assessment must have a reasonable basis as determined by the governing body of the city, town or village. WIS. STAT. § 66.073(1)(b).

¶ 20. The parties disagree as to the meaning of the third requirement. The Genrichs suggest it only requires that the assessment be in proportion to the benefits conferred. On the other hand, the City argues it only requires the method used to value the special assessment be reasonable and fair. The municipality board decides which method should be used, and the City seems to argue this is not subject to review by the

---

[7] Special assessments can be levied under either the municipality's taxing or police power. The principle difference between an assessment levied under the police and taxing lies in the dollar amount that can be assessed. If an assessment is levied under the taxing power, the amount assessed cannot exceed the value of the benefits accruing to the property. WIS. STAT. § 66.0703(1)(b). If an assessment is levied under the police power, the amount can exceed the value of the benefits conferred to the property provided this amount has a reasonable basis. *Id.*

[8] When a property owner challenges a special assessment, a presumption exists that the city officers proceeded regularly unless the contrary is shown by competent evidence. *Soo Line R.R. Co. v. Neenah*, 64 Wis. 2d 665, 671, 221 N.W.2d 907 (1974).

circuit court. Apart from these two views, the circuit court concluded the assessment was reasonable per se because the City valued the assessment by use of an accepted method, the front-foot method. The reasonableness inquiry is not that simple. We agree with the Genrichs that reasonableness requires the assessment to be in proportion to the benefits conferred. Notwithstanding the fact that the statute seems to place the determination of reasonableness in the hands of the City, the courts have interpreted reasonableness to incorporate a dual analysis: first, uniformity (the exercise of the police power must be reasonable in relation to all affected properties); and second, uniqueness (the results of that exercise on a specific property must be in proportion to the benefits conferred). *See Lac La Belle Golf Club*, 187 Wis. 2d at 285–86; *see also Peterson v. City of New Berlin*, 154 Wis. 2d 365, 373, 453 N.W.2d 177 (Ct. App. 1990).

¶ 21. Uniformity requires the assessment to be fairly and equitably apportioned among property owners in comparable positions. *Lac La Belle Golf Club*, 187 Wis. 2d at 285; *Peterson*, 154 Wis. 2d at 373. To accomplish this, the municipality must use a method of assessment that produces a uniform and equal value for all affected properties. *Lac La Belle Golf Club*, 187 Wis. 2d at 285. The non-exhaustive list of methods the City can use include (a) assessed value, (b) front footage, or (c) lump sum assessment. *Village of Egg Harbor v. Mariner Group*, 156 Wis. 2d 568, 572, 457 N.W.2d 519 (Ct. App. 1990). Whatever method is used, it must produce uniform and equal assessment amounts. For this reason, it is unreasonable to use the same method to assess a group of property owners when it results in an entirely disproportionate result that could easily be

remedied by using a different method. *Peterson*, 154 Wis. 2d at 373. In line with this principle, it is also unreasonable to assess one group of property owners by a different method from that used to assess others if the results are entirely disproportionate. *Gelhaus & Brost, Inc. v. City of Medford*, 144 Wis. 2d 48, 52, 423 N.W.2d 180 (Ct. App. 1988). Thus, there is no such thing as a per se reasonable method.

██ ██

¶ 22. Finally, the circuit court must consider whether the uniqueness of the circumstances require a reduction in the special assessment. *Lac La Belle Golf Club*, 187 Wis. 2d at 284–87. An assessment is reasonable in its results when it is in proportion to the benefits conferred. *Gelhaus*, 144 Wis. 2d at 51–52; *Duncan*, 22 Wis. 2d at 264. To make this determination, the circuit court must look at the degree, effect, and consequences of the special benefits. *Egg Harbor*, 156 Wis. 2d at 572; *see, e.g., Lac La Belle Golf Club*, 187 Wis. 2d at 284–88 (unreasonable assessment where golf course was assessed for local improvement of water mains, but it would cost over a million dollars to reconfigure the golf course if it were to benefit from the improvement). However, because it is undisputed that the City levied the assessment using its police power, the assessment can exceed the monetary value of the benefits conferred. *See* WIS. STAT. § 66.0703(1)(b).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded. Costs denied to both parties.