David G. HILDEBRAND and Susan G. Hildebrand,
Plaintiffs-Respondents,

v.

TOWN OF MENASHA, Defendant-Appellant,†

CURTIS LAW OFFICE, Surety.

Court of Appeals

*No. 2010AP897. Submitted on briefs January 11, 2011.
—Decided May 11, 2011.*

2011 WI App 83

(Also reported in 800 N.W.2d 502.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles D. Koehler* of *Herrling Clark Law Firm Ltd.*, Appleton.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Beth D. Osowski* of *Curtis Law Office*, Oshkosh.

Before Brown, C.J., Anderson and Reilly, JJ.

¶ 1. ANDERSON, J.   The Town of Menasha appeals from the circuit court's final judgment holding that the Town could not legally assess David and Susan Hildebrands' commercial property for the cost of installing a portion of asphalt trail which abuts the property. Because the special assessment imposed upon the Hildebrands did not constitute a valid and enforceable exercise of the Town's police power under Wis. Stat. § 66.0703 (2009–10),[1] we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

*Law*

¶ 2.   WISCONSIN STAT. § 66.0703(1)(a) provides that a municipality may levy and collect special assessments upon property when special benefits are conferred upon that property:

> [A]ny city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments.

■■

¶ 3.   Special assessments can only be levied for local improvements. *Genrich v. City of Rice Lake*, 2003 WI App 255, ¶ 9, 268 Wis. 2d 233, 673 N.W.2d 361. Before the correctness of a special assessment can be addressed, the circuit court must initially examine whether the improvement is local. *Id.* This examination presents a question of fact. *Id.* The "purpose for making the improvements is relevant to resolving the nature of the improvement, but not determinative because the court must also consider the benefits the property receives." *Id.*, ¶ 10.

■

¶ 4.   Purpose is relevant to determining the nature of the improvement because of the manner in which local improvement is defined. *Id.*, ¶ 11. A "local improvement" is a type of improvement primarily made for the accommodation and convenience for residents of a particular locality that grants special benefits to their property. *Id.* The phrase "primarily made" signifies that consideration be given to the municipality's motivations

for making the improvements. *Id.* In so considering, the circuit court must decide what the primary purpose for the improvements was and who the primary objects of that purpose were. *Id.* "Specifically, the [municipality's] purpose for initiating improvements must be for reasons of accommodation and convenience (the 'what' question), and the object of the purpose must be primarily for the people in a particular locality (the 'who' question) for an improvement to fall within the local improvement category." *Id.*

██ ██

¶ 5.    Thus, if the improvement's primary purpose and effect are to benefit the public, it is not a local improvement. *Id.*, ¶ 12. Purpose alone, though, is not conclusive; the court must also consider the effect of the improvement by examining the type of benefits conferred and their extent. *Id.* And this consideration should bear the greatest weight. *Id.*

██

¶ 6.    With regard to the type of benefits, while general improvements grant substantially equal benefits and advantages to the property of the whole community or otherwise benefit the public at large, local improvements confer "special benefits" on property in a particular area. *Id.*, ¶ 13. A special benefit has the effect of furnishing an "uncommon advantage" that either increases the services provided to the property or enhances its value. *Id.*

██

¶ 7.    An uncommon advantage is a benefit that differs in kind rather than in degree from those benefits enjoyed by the general public. *Id.*, ¶ 14. It can be thought of as an advantage that is in addition to that benefit enjoyed by other property owners in the munici-

pality. *Id.* When evaluating an uncommon advantage grounded upon an alleged increase in services, the accrual of the benefits must be "certain." *Id.* (citations omitted). That is to say, the benefit must not be contingent on unplanned future action by the municipality. *Id.* If the uncommon advantage stems from an enhancement in the property's value, the court must view the benefits and their effect in light of the highest and best possible use of the property. *Id.*

¶ 8.  Furthermore, the extent of the benefits must be substantial and capable of realization in a reasonable amount of time. *Id.*, ¶ 15. A benefit is substantial if it provides more than incidental effects to the property. *Id.* Accordingly, a local improvement can incidentally grant general benefits to the public at large or the property of the whole community yet still be local, while a general improvement may incidentally provide special benefits to particular properties and nevertheless remain general. *Id.* Finally, the effect of the benefit must be capable of realization in a reasonable amount of time. *Id.* However, evidence that the property will not be developed in the foreseeable future, or that there is no present use for the improvement, will not prevent a finding of special benefits. *Id.*

### Standard of Review

¶ 9.  We review the circuit court's discretionary findings under the clearly erroneous standard. *See Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 190, 488 N.W.2d 104 (Ct. App. 1992); Wis. Stat. § 805.17(2).

### Facts

¶ 10.  In a Final Assessment Resolution mailed to the Hildebrands on May 21, 2008, the Hildebrands were

assessed \$33,205.60 in construction costs for the installation of an asphalt trail abutting their commercial property. In response, the Hildebrands filed a notice of appeal to the circuit court on August 11, 2008.

¶ 11. In the notice of appeal, the Hildebrands raised eleven issues. The Town then filed a motion for summary judgment on January 28, 2009. In its motion, the Town asked the court to rule that under Wis. Stat. § 66.0703, it is presumed that the Town proceeded reasonably with regard to the assessment of the Hildebrands' property and that the Hildebrands failed to raise any genuine issues of material fact to rebut the presumption.

¶ 12. After a hearing on the Town's summary judgment motion, the court held that the method used by the Town in imposing its assessments was reasonable, but that there remained genuine issues of material fact as to whether there are appropriate special benefits and as to whether the trail constitutes a local improvement. Thus, the court did not grant the Town's summary judgment motion. In its order, the court defined the three issues that remained open for trial:

a. Whether the Hildebrands' property was specially benefited by the trail segment for which assessments were imposed as required for imposition of special assessments under § 66.0703 Wis. Stats.

b. Whether the trail segment for which assessments were imposed constitutes a local improvement which if determined in the affirmative would make the trail a proper subject for imposition of special assessments under § 66.0703 Wis. Stats.

c. Whether the trail segment for which assessments were imposed constituted a general improvement for the community at large and therefore not a

proper subject for imposition of special assessments under § 66.0703 Wis. Stats.

¶ 13. A trial was held on January 25, 2010, where the following facts were established. The Hildebrands own approximately 6.216 acres of land on the north side of West American Drive with 958.17 feet of frontage. Although the land is now zoned commercial, David Hildebrand testified that he had no current plans to develop it.

¶ 14. The portion of the Hildebrand property at issue was not served by a sidewalk or by other means of pedestrian or safe bicycle travel; however, as noted, it was served by West American Drive, which is a four-lane arterial street.

¶ 15. The Town previously constructed a trail abutting this parcel on Cold Spring Road. This trail runs along the eastern boundary of the Hildebrand property and crosses West American Drive. Recently, the Town constructed another portion of the trail abutting the southern edge of the Hildebrand property on West American Drive.

¶ 16. To do this, the Town passed a resolution, claiming authority under its police powers pursuant to Wis. Stat. § 66.0703 to impose special assessments. A special assessment for the trail project was imposed against the Hildebrands' property as well as against the property of others. The trail project involved total trail construction frontage of 8168.72 feet (approximately 1.5 miles) on West American Drive.

¶ 17. Pursuant to the Town's resolution, the Hildebrands were assessed construction costs for the trail totaling $33,205.60.

¶ 18. The approximately ten-foot-wide trail is constructed with an asphalt surface and is an integral

268

part of a multi-community recreational trail connecting Oshkosh to Hortonville. The trail is slated to "ultimately connect Manitowoc, WI with Stevens Point, WI." The Town advertised that the trail offers "a variety of different recreational opportunities and connections to the various communities throughout the Fox Cities."

¶ 19.  The Town was a sponsoring agency for a map distributed in its town hall entitled "2007 Trails of the Fox Cities." This map was "provided as a guide for those who intend to use the recreational trails throughout the Fox Cities and surrounding area."

¶ 20.  To complete the trail, the Town decided to close gaps on West American Drive. Prior to the Town's implementation of special assessments against the few commercial properties on West American Drive, the Town had also used public funds to construct portions of the trail next to other commercial properties.

¶ 21.  The director of parks and recreation applied for grant funding for the trail pursuant to the DNR code addressing the Administration of Outdoor Recreation Program Grants and State Aid. According to WIS. ADMIN. CODE § NR 50.06, priorities for these grants are given for "[a]ctivities for the general public over those for a limited group," "[p]rojects not having other public or private funds available to them," "[p]rojects which serve a wide segment of the public," and "[t]o projects in which the resource would be lost for recreation use if not immediately acquired or developed." The trail extension project was supported by a Five Year Park Plan, implementing recommendations of the East Central Trail Plan.

¶ 22.  In applying for the grants, the Town indicated that the trail would "be used extensively by people outside [its] governmental jurisdiction." The Town explained:

This trail extension project is a critical link for the Fox Valley trail system . . . .

. . . .

This project is also identified in the Town of Clayton's proposed Comprehensive Plan, which shows future extensions to the Wiouwash trail. East Central Planning Commission and Winnebago County have also identified the U.S. Highway 10 trail as a preferred route . . . .

. . . .

Overall the Town of Menasha has already invested over $180,000 for the U.S. Highway 10 and C.T.H. CB pedestrian trails. Grant funding is critical in the continuation of the regional trail system . . . .

. . . .

This project will directly affect over 110,000 people located in the Towns of Menasha, Clayton and Grand Chute and the Cities of Neenah, Appleton and Menasha. This portion of the bike and pedestrian trail system will be an integral part of the planned regional trail system. It will ultimately involve over 350,000 people that are a part of the entire Fox Valley area.

. . . .

The trails have become a tourist draw . . . .

The trail system will not only benefit the residents of the Town, but also the Fox River Valley region . . . . This system is critical in promotion of greenspace and tourism for the Town, region and State.

¶ 23. Throughout the special assessments process, the Town referred to it as the "recreational trail" or "trail" and not as the sidewalk or part of the trans-

270

portation network: the Preliminary Engineer's Report detailed plans for an ASPHALT RECREATION TRAIL; the Preliminary Assessment Resolution described the project as "[c]onstruction of an asphalt recreation trail"; the affidavit of mailing advised affected property owners that the project was to "[c]onstruct an asphalt recreation trail"; the statutory letter advised David Hildebrand that he was receiving information about "the Town's upcoming recreation trail projects"; TOWN OF MENASHA, WIS., MUNICIPAL CODE ch. 17 is entitled "Public Parklands and Rental Facilities" and the first subsection provides: "Recreation trails in the Town of Menasha shall be considered linear parks and shall be included in the following ordinance"; at the edge of the newly installed trail, on the corner of the Hildebrands' property, there is a Town sign "Trail Rules" that provides:

PLEASE . . . Take Pride in Your Trail

DO CLEAN UP After Your Leashed Pets

NO Litter

NO Horses

NO Motorized Vehicles

PLEASE REFER TO CHAPTER 17 OF THE TOWN MUNICIPAL CODE FOR ALL REGULATIONS CONCERNING USE OF THE TOWN OF MENASHA PARKS.

There is other signage on the trail labeled "Trail Etiquette." It provides:

The trail is two-way traffic, users should stay right

Bikers and inline Skaters should slow down when approaching pedestrians

When passing, announce your intentions by saying, "Passing on your left"

No stopping or standing on the trail (use observation areas)

Leashed dogs permitted

Remove pet waste

Finally, the Town indicated that it would "provide" or "support" a "trail patrol associated with the proposed trail."

¶ 24.   The Town does not assess properties abutting a park—which is a general benefit to a community —for any sort of special benefits to those properties. And the community development director for the Town testified that trail users are specifically directed to follow the regulations in the park department ordinances when they use this trail.

¶ 25.   Prior to the installation of this section of trail on West American Drive, much of West American Drive was already served by a sidewalk on the south side of the street. There were some gaps in this sidewalk where property had not been commercially developed.

¶ 26.   The ten-foot-wide asphalt recreational trail is twice as wide as the typical concrete sidewalk. While clearing sidewalks of snow and ice is typically the responsibility of the abutting property owner, clearing this trail is the Town's responsibility. The trail is plowed after the streets if there is an opportunity and it would not result in overtime.

¶ 27.   Six witnesses testified on behalf of the Town. In essence, the witnesses related that they believed a special benefit was conferred because the trail (1) provides direct access to the Hildebrand property for nonmotorists, such as pedestrians and bicy-

clists; (2) provides a safe mode of transportation for its users; (3) enhances the Hildebrand property's value; and (4) enhances the Hildebrand property's marketability. The court extensively questioned the witnesses about whether the benefit was one of degree or one of kind.

¶ 28. One of the Town's witnesses, George Dearborn, the community development director for the Town, admitted that the Town "[does] not have to maintain [the trails] if [it] [does] not desire":

> Under our definition, we have not maintained [the trails] as sidewalks. We could define them as such, but at this point in time, *we're defining them as trails; therefore,* we do not have to maintain them if we do not desire. (Emphasis added.)

¶ 29. Funding for trail maintenance comes from the parks department, while street maintenance funding comes from the streets department.

¶ 30. Pictures of the trail taken two weeks after the last precipitation were presented. Portions of the trail were snow covered and the rest was thick with ice—while at the same time, abutting driveways and streets were clear. Joggers ran on the roadway, which was clear of ice, unlike the trail.

¶ 31. After the close of evidence, the court explained its decision to the parties. Having crystallized the issue as: whether the trail improvement was "local or general," the court identified *Genrich* as the controlling case. *See Genrich*, 268 Wis. 2d 233, ¶ 8.

¶ 32. The court emphasized that under *Genrich*, a general improvement is one that confers a general benefit; in other words, a substantially equal benefit and advantage to the whole community or public at large. *See id.*, ¶ 8. In contrast, a local improvement, although incidentally beneficial to the public at large, is

primarily made for the accommodation and convenience of inhabitants in a particular locality and confers special benefits to their properties. *Id.* Purpose is relevant to determining the nature of the improvement. *Id.*, ¶ 11.

¶ 33. In examining the Town's purpose for making the improvements, the court explained that it asked the witnesses the questions it did with respect to purpose and found that "it's to have complete streets, safety for their residents, transportation for their residents . . . hooking up trails [to] have this trail system." The court went on to say it thinks these are "all admirable reasons" but they, in fact, thwart the Town's argument. It determined that "the primary purpose of this trail is to have a recreational trail system throughout the Town of Menasha which benefits the entire town." It further found that the trail "wasn't specifically put in to benefit any specific property, much less David Hildebrand['s]." In short, "the purpose was not for a specific or special benefit to this property but, rather, a general benefit . . . to the town residents."

¶ 34. The court then explained what is meant by a special benefit under *Genrich*. A special benefit has the effect of furnishing an uncommon advantage that either increases the services provided to the property or enhances its value. *See id.*, ¶ 13. In finding that "there is no special benefit or uncommon advantage" given to the Hildebrand property, the court emphasized that the Hildebrand property was on a trail system *before* the West American Drive trail was installed.

¶ 35. Continuing its application of the law to the facts, the court explained that under *Genrich*, "[a]n uncommon advantage is a benefit that differs in kind rather than in degree from those benefits enjoyed by the general public." The court informed that this distinction between a difference in *kind* rather than in

*degree* is why during the trial it "continually went over with the [Town's] experts" whether they were "talking about a matter of degree; and, in essence, what they said is yeah, we're talking about a matter of degree, it's not of kind." The court found the trail does not provide an uncommon advantage to the Hildebrand property.

¶ 36. Tracking *Genrich*, the court explained that "[t]he extent of the benefits must be substantial and capable of realization in a reasonable amount of time." *See id.*, ¶ 15. It determined there is not "any substantial realization of any type of reasonable amount of benefit" that is given to the Hildebrand property by having the extension of the trail:

> I think [the Hildebrands] have the same benefit by having the trail on the east side of the property, and I can see now, if there is a strip mall, they can all enter one end and go down any parking area down to the other end; so I don't think that there is, once again, any special benefit to this property.

The court acknowledged that *Genrich* holds that "evidence that the property will not be developed in the foreseeable future, or that there is no present use for the improvement, will not prevent a finding of special benefits." *See id.*, ¶ 15. However, the court clarified that the lack of plans to develop the property had no effect "whatsoever" on its decision.

¶ 37. Finally, the court noted that *Genrich* holds that if the circuit court concludes that the nature of the improvement is local, "it must then consider the propriety of the special assessment levied on the [] property pursuant to the [Town's] police power." *See id.*, ¶ 19. Here, the court had already concluded that the nature of the improvement is general and not local, so under *Genrich*, it was not required to make this further consideration. However, it did. And, in engaging in this

analysis, it concluded that, despite the statutory presumption that the Town's exercise of its police power under Wis. Stat. § 66.0703 is valid, the Town's argument fails because the assessment was not levied only for the special benefits conferred on the Hildebrand property: "The problem is that . . . there is not a special benefit local to this property; and therefore, I would prohibit the assessment."

¶ 38. After trial, in a final written judgment, the court held that the special assessments imposed upon the Hildebrands by the Town did not constitute a valid and enforceable exercise of the Town's police power. The Town appeals.

¶ 39. On appeal, the Town's arguments can be summarized as follows: (1) The Hildebrands did not rebut the presumption of validity[2] of the Town's assessment; (2) The trail constituted a local benefit; (3) The trail is the same as a sidewalk for special assessment purposes; and (4) The Town's expert, Dearborn, should have been allowed to use his survey of business operators to support his opinion that the Hildebrand property specially benefits from the trail.

¶ 40. Considering the circuit court's findings of facts, our review is limited to whether those findings are clearly erroneous. We hold that none of the findings were clearly erroneous and track the sound reasoning of the circuit court.

¶ 41. As demonstrated by our reliance on the *Genrich* precedent in the law section of this opinion, we agree with the circuit court that *Genrich* controls.

---

[2] *See Molbreak v. Village of Shorewood Hills*, 66 Wis. 2d 687, 696, 225 N.W.2d 894 (1975) (when the law is followed, a presumption of validity exists in favor of the assessing body).

██ ¶ 42. The Hildebrands successfully rebutted any presumption of the validity of the assessment and showed that the primary purpose of the trail—to complete the trail system in Winnebago county—confers a general, not local, benefit under the law. Assuming, for the sake of discussion, the Town is correct that a trail abutting the Hildebrands' property confers a benefit to the property, this fact is not determinative. Merely proving that the Hildebrands are incidentally benefitted or that their benefit is arguably greater "in degree" than the general public, does not transform the benefit from a general to a local benefit. *See Genrich*, 268 Wis. 2d 233, ¶¶ 14, 15. As the trial court pointed out, the Hildebrands' property was already serviced by a different trail on the east end. Furthermore, in order for the Town to prevail in its argument that the Hildebrands received a local benefit from this new trail, the Hildebrands must also have received an uncommon advantage—i.e., a benefit that differs *in kind,* rather than in degree from that of the general public. *See id.,* ¶ 14. The record shows nothing of the sort. Indeed, proof of incidental benefit and/or a benefit greater in degree conferred upon the Hildebrands is the most that can be gleaned from the Town's evidence, including its experts' testimonies. This is not enough.

¶ 43. We reject the Town's argument that the trail is the equivalent of a sidewalk, the costs of which can be assessed against the property owner without any special procedure. *See* Wis. Stat. § 66.0907(3)(f). The Town cannot have it both ways. The facts unequivocally show that the Town treated the trail as a trail. The Town cannot now call it a sidewalk simply to legitimize the special assessment levied against the Hildebrands' property.

¶ 44. The circuit court properly sustained the objection to the Town's community development director testifying as to what third parties told him about trails when he conducted a survey of commercial businesses near other trails. "Hearsay data upon which the expert's opinion is predicated may not be automatically admitted into evidence by the proponent and used for the truth of the matter asserted unless the data are otherwise admissible under a recognized exception to the hearsay rule." *State v. Swope*, 2008 WI App 175, ¶ 35, 315 Wis. 2d 120, 762 N.W.2d 725 (citation omitted). No recognized exception to the hearsay rule was offered.

## Conclusion

¶ 45. The circuit court's findings and conclusions were not clearly erroneous. The evidence convinced the circuit court and convinces this court that the purpose of the trail was not to accommodate any particular property owners and it did not confer a special benefit as that is defined. In other words, the Hildebrands proved that they did not receive an uncommon advantage, i.e., one that differs in kind, rather than in degree, from the benefits enjoyed by the general public. *See Genrich*, 268 Wis. 2d 233, ¶ 14. The Hildebrands successfully rebutted any presumption of the validity of the assessment and showed that the primary purpose of the trail—to complete the trail system in Winnebago county—confers a general, not local, benefit under the law.

*By the Court.*—Judgment affirmed.