EMJAY INVESTMENT COMPANY,
Plaintiff-Appellant-Petitioner,

v.

VILLAGE OF GERMANTOWN, Defendant-Respondent.

Supreme Court

*No. 2009AP1714. Oral argument February 2, 2011.
—Decided May 17, 2011.*

2011 WI 31

(Also reported in 797 N.W.2d 844.)

252

For the plaintiff-appellant-petitioner there were briefs and oral argument by *Matthew R. Jelenchick, Niebler, Pyzyk, Roth & Carrig LLP*

For the defendant-respondent there was a brief and oral argument by *Amy J. Doyle, Crivello Carlson, S.C.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished per curiam decision of the

court of appeals, *Emjay Investment Co. v. Village of Germantown,* No. 2009AP1714, unpublished slip op. (Wis. Ct. App. June 30, 2010), that affirmed an order of the Washington County Circuit Court[1] granting the Village of Germantown's motion to dismiss Emjay Investment Company's appeal of special assessments levied under Wis. Stat. §§ 66.0701 and 66.0703 (2003–04).[2] The circuit court dismissed the appeal because Emjay Investment Company (Emjay) failed to appeal within 90 days after the date on which the Village of Germantown (Germantown) published its final resolution levying the special assessments or mailed notice of its final resolution to interested persons. *See* Wis. Stat. § 66.0703(12)(a), (e). The court of appeals affirmed. We granted Emjay's petition for review.

¶ 2. Emjay does not dispute that it failed to comply with the 90–day period of appeal[3] set forth in Wis. Stat. § 66.0703(12)(a). Instead, Emjay argues that § 66.0703(12)(a) does not apply in this case because

---

[1] The Honorable David C. Resheske presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

Wisconsin Stat. §§ 66.0701 and 66.0703 were preceded by Wis. Stat. §§ 66.62 and 66.60 (1997–98), respectively. *See* 1999 Wis. Act 150, §§ 532, 544; *Steinbach v. Green Lake Sanitary Dist.,* 2006 WI 63, ¶ 14, 291 Wis. 2d 11, 715 N.W.2d 195. The statutes were recodified as a result of the legislature's effort to reorganize and modernize Wis. Stat. ch. 66. *See* 1999 Wis. Act 150, prefatory note. Wisconsin Stat. §§ 66.0701 and 66.0703 are substantively identical to their predecessor statutes.

[3] The 90–day period of appeal under Wis. Stat. § 66.0703(12)(a) has also been referred to as a 90–day period of limitations, *see, e.g., Mayek v. Cloverleaf Lakes Sanitary Dist. No. 1,* 2000 WI App 182, ¶ 13, 238 Wis. 2d 261, 617 N.W.2d 235, and a 90–day statute of limitations, *see, e.g., Bornemann v. City of New Berlin,* 27 Wis. 2d 102, 106, 109–10, 133 N.W.2d 328 (1965).

(1) the special assessments were contingent; (2) the special assessments were levied after construction of the improvements was completed; or, alternatively, (3) the special assessments were fraudulent. In any case, Emjay argues that its appeal can proceed under Wis. Stat. § 893.72, irrespective of the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a).

¶ 3. We disagree with Emjay and therefore affirm the court of appeals' decision.

¶ 4. We conclude that Emjay's appeal and complaint challenging the special assessments levied by Germantown are governed by the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a). We further conclude that Wis. Stat. § 893.72 is inapplicable in this case. It is undisputed that Emjay filed its notice of appeal and complaint years after the 90–day period of appeal had passed, and accordingly, the circuit court properly dismissed the action.

## I. FACTUAL BACKGROUND

¶ 5. Mark and Donna Lohmann are the general partners of Emjay. Until 2007, Emjay owned two parcels of land on the corner of Appleton Avenue (State Highway 175) and County Line Road (County Highway Q) in Germantown. Emjay owned and operated Lohmann's Steak House on that corner for over 60 years.

¶ 6. In the late 1990s, Menard, Inc. (Menard) submitted a development plan to Germantown for a proposed retail development to be located at the intersection of Appleton Avenue and Maple Road. Menard and Germantown agreed that certain road improvements would need to be undertaken in order to accommodate the large retail development. Specifically, Appleton Avenue would need to be widened, and a

256

sewer lift station situated in the proposed expansion area would need to be relocated. In addition, the intersection of Appleton Avenue and Maple Road would need to be reconstructed, including installation of traffic signals and turn lanes.

¶ 7. On July 1, 2002, Germantown entered into a Development Agreement with Menard, in which Menard agreed to install and pay for the above-mentioned improvements. In return, Germantown agreed to reimburse Menard for a portion of the cost through special assessments levied against and collected from benefitted properties. The Development Agreement defined the benefitted properties as those abutting Appleton Avenue, or more specifically:

> Owners or purchasers of benefitted properties abutting STH 175, including without limitation, owner or purchasers of properties located on the south side of STH 175 running from CTH Q to the gas pipeline north of the Maple/STH 175 intersection and owners or purchasers of properties located on the north side of STH 175 running from the [Menard] Property to the gas pipeline north of the Maple/STH 175 intersection.

It is undisputed that Emjay's property was located within that geographical description (hereinafter the "Special Assessment District").

¶ 8. Menard commenced construction. The improvements were significantly completed by the end of 2003.

¶ 9. During that time, on July 7, 2003, Germantown adopted a Preliminary Resolution declaring its intent to exercise its police powers under Wis. Stat. §§ 66.0701 and 66.0703 and under § 8.04 of Germantown's Municipal Code to levy special assessments against the Special Assessment District for the

relocation of Sanitary Sewer Lift Station No.3 and for the road improvements to Appleton Avenue. *See* Wis. Stat. § 66.0703(4). The Preliminary Resolution provided that "[t]he special assessments shall be deferred, with interest, until the benefitted property is conveyed or developed, whichever comes first."

¶ 10. On July 11, 2003, Germantown mailed notice of the Preliminary Resolution to all interested property owners, including Emjay.

¶ 11. On or about April 25, 2004, Germantown's Director of Public Works and Village Engineer filed with the Village Clerk a report on the proposed special assessments. *See* Wis. Stat. § 66.0703(4), (5). The report detailed the cost of the improvements, which totaled $3,144,313.44. *See* § 66.0703(5)(b). The report also included a Statement of Benefits, which provided that the Director of Public Works examined the relevant area and made a benefit determination for each parcel included within the Special Assessment District. *See* § 66.0703(5)(c), (d). Concerning the two parcels owned by Emjay, the report proposed a special assessment of $73,417.01 and $85,291.39, respectively. The Director of Public Works determined that "a benefit will accrue to each of the properties due to the improvement on the basis of providing improved safety through controlled traffic flow and turning movements and enhanced economical value to the property."

¶ 12. On April 28, 2004, Germantown published notice of a May 17, 2004, public hearing on the Preliminary Resolution and mailed notice of the public hearing to all interested property owners, including Emjay. *See* Wis. Stat. § 66.0703(7)(a).

¶ 13. Once Emjay received notice of the public hearing, Mark Lohmann telephoned Germantown's Village Hall. According to Mark Lohmann, a person at

Village Hall informed him that the special assessment would not affect Emjay's property because the property was already commercially developed.

¶ 14. As noticed, Germantown conducted a public hearing on the Preliminary Resolution on May 17, 2004.

¶ 15. On June 21, 2004, Germantown adopted Resolution No. R21–04, the Final Resolution levying special assessments against the Special Assessment District for the relocation of Sanitary Sewer Lift Station No.3 and for the road improvements to Appleton Avenue. *See* Wis. Stat. § 66.0703(8)(c). The Final Resolution explicitly provided that the special assessments were made pursuant to Germantown's police power and pursuant to Wis. Stat. §§ 66.0701 and 66.0703 and § 8.04 of Germantown's Municipal Code. In addition, the Final Resolution expressed Germantown's determination that the properties located in the Special Assessment District "have received a special benefit" from the improvements and that the proposed special assessments have a reasonable basis.

¶ 16. Relevant to this case, the Final Resolution provided that pursuant to Wis. Stat. § 66.0715, the special assessments "shall be deferred, along with accrued interest . . . until the benefitted property is commercially developed or redeveloped." The special assessments were deferred for a period of up to 10 years:

> If a benefitted property, or a portion thereof, is commercially developed or redeveloped, within ten (10) years, as measured from the date of execution of the Developer Agreement on July 1, 2002, to the date on which the Village [of Germantown] shall grant final approval of a site plan for the commercial development or redevelopment of the benefitted property, the principal balance of the special assessments, plus accrued

259

interest as provided for herein, shall immediately become due and payable in full to the Village of Germantown.

The Final Resolution then stated that the special assessments, plus interest, collected from the benefitted properties will be paid to Menard, in accordance with the terms of the Development Agreement.

¶ 17. The Final Resolution was published on June 30, 2004. *See* Wis. Stat. § 66.0703(8)(d). On July 12, 2004, Germantown mailed notice of the Final Resolution to all interested property owners, including Emjay. *See id.* Emjay does not dispute that it received such notice.

¶ 18. In September 2007, Mark and Donna Lohmann retired, and Emjay sold its two parcels to a developer. Before the closing of the sale, Germantown sent Emjay two letters of special assessment, one for each parcel. Germantown claimed outstanding special assessments of $73,417.01 and $85,291.39, respectively, plus six percent interest, due and payable in full upon the sale of the property. In accordance with Germantown's claimed special assessments, the sale contract was amended, and Emjay was required to deposit $235,000 in escrow to cover the cost of the special assessments, subject to Emjay's right to contest the special assessments.

## II. PROCEDURAL POSTURE

¶ 19. On May 30, 2008, Emjay filed a "Notice of Appeal Pursuant to Wis. Stat. Sec. 66.0703(12) and Complaint" against Germantown. The notice of appeal alleged that the special assessments were "defective"[4]

---

[4] Emjay's "Notice of Appeal" alleged that the special assessments were defective for the following reasons:

and requested a judgment annulling the assessments under § 66.0703(12)(d). Emjay's complaint sought a judgment declaring the special assessments illegal and void and a judgment declaring that Germantown had

a. The special assessments levied on the property exceed the value of the benefits accruing to the property.

b. The special assessments as levied, have no reasonable basis.

c. The area of the special assessments is not limited or determined by the special benefits conferred.

d. The Village [of Germantown] does not have jurisdiction to specially assess the property since the property is not adjacent to or abutting the improvements.

e. The special assessments, or any installations thereof, were never entered upon the tax rolls of the Village [of Germantown].

f. Accrued interest on the special assessments is not related to any bond, note or other financing expense, and therefore, is not recoverable as part of the special assessments.

g. The special assessment does not become due until the property is finally approved for commercial development upon application to the Village [of Germantown], and may never be collected relative to certain properties that have been developed in the past or will not be developed in the future.

h. That the special assessments expire in 2012 and may never be collected by the Village [of Germantown] relative to properties that are not developed before then.

i. The improvements, or a portion thereof, sought to be paid by the special assessments were not for municipal purpose, and were not public works.

j. The special assessments include interest from the date of the Development Agreement with Menard, Inc. and not of any special assessment notice.

k. The Director of Public Works did not prepare a preliminary or final report as required to be part of the Resolution.

l. The Director of Public Works did not prepare any preliminary or final plans and specifications for the improvements to be part of the report.

261

no interest in Emjay's property for purposes of levying special assessments. In addition, Emjay's complaint alleged that the special assessments were "false, a sham and frivolous" and therefore impaired title to Emjay's property; the special assessments tortuously interfered with Emjay's contractual right to receive the full value of its property; and the special assessments were confiscatory in nature and effectively constituted a taking of Emjay's property without just compensation and without due process of law.

¶ 20. Germantown moved the circuit court to dismiss Emjay's appeal and complaint, arguing that Emjay's claims are barred by the 90–day period of appeal set forth in Wis. Stat. § 66.0703(12)(a). Germantown maintained that Emjay's inclusion of other causes of action in the complaint does not save the claims from § 66.0703(12)(a), since the additional causes of action "[arise] out of and are based entirely on the alleged improper assessments . . . ."

¶ 21. On April 13, 2009, the circuit court granted Germantown's motion, dismissing Emjay's appeal and

m. The Director of Public Works did not produce any estimate of the entire cost of the improvements or a statement of the final cost of the improvements to be part of the report.

n. The Director of Public Works did not make any statement that each property against which the special assessments were levied had been inspected and were benefitted, setting forth the basis of such benefit.

o. The report of the Director of Public Works was never filed with the Village Clerk.

p. The Village [of Germantown] did not adopt any resolution directing the work or improvement to be carried out and paid for in accordance with the Director of Public Works' report.

q. The Village [of Germantown] did not approve the plans and specifications by resolution.

complaint on the grounds that Emjay failed to comply with the strictly enforced 90–day period of appeal in Wis. Stat. § 66.0703(12)(a).

¶ 22. Emjay appealed, and the court of appeals affirmed. *Emjay,* No. 2009AP1714. In an unpublished per curiam decision, the court of appeals agreed with the circuit court that Emjay's action was barred by the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a). *Id.,* ¶ 3.

¶ 23. Emjay petitioned this court for review, which we granted on September 22, 2010. We now affirm.

## III. STANDARD OF REVIEW

¶ 24. A motion to dismiss based upon a failure to appeal within a statutorily mandated period functions as a motion for summary judgment. Whether the circuit court properly granted a motion for summary judgment is a question of law that we review de novo, applying the same standards used by the circuit and set forth in Wis. Stat. § 802.08 (2009–10). *See Town Bank v. City Real Estate Dev., LLC,* 2010 WI 134, ¶ 31, 330 Wis. 2d 340, 793 N.W.2d 476; *Tatera v. FMC Corp.,* 2010 WI 90, ¶ 15, 328 Wis. 2d 320, 786 N.W.2d 810. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." § 802.08(2) (2009–10).

## IV. ANALYSIS

¶ 25. A "special assessment," also known as an "assessment for benefits," is defined as "[t]he assess-

ment of a tax on property that benefits in some important way from a public improvement." *Black's Law Dictionary* 112 (7th ed. 1999); *see also Park Ave. Plaza v. City of Mequon,* 2008 WI App 39, ¶ 17, 308 Wis. 2d 439, 747 N.W.2d 703 ("A special benefit has the effect of furnishing an uncommon advantage to a property. An uncommon advantage is one that differs in kind, rather than in degree, from the benefits enjoyed by the general public." (Internal citation omitted.)).

¶ 26. A municipality's power to levy special assessments against private property owners is statutory. *Steinbach v. Green Lake Sanitary Dist.,* 2006 WI 63, ¶ 13, 291 Wis. 2d 11, 715 N.W.2d 195. Pursuant to Wis. Stat. § 66.0701(1), the governing body of a village "may, by ordinance, provide that the cost of installing or constructing any public work or improvement shall be charged in whole or in part to the property benefited, and make an assessment against the property benefited in the manner that the governing body determines." Consistent with its authority under § 66.0701(1), Germantown enacted § 8.04 of its Municipal Code for purposes of levying special assessments. Section 8.04 is based upon Germantown's police powers. *See Mowers v. City of St. Francis,* 108 Wis. 2d 630, 636, 323 N.W.2d 157 (Ct. App. 1982).

¶ 27. In addition, pursuant to Wis. Stat. § 66.0703(1)(a), the governing body of any city, town or village may, by resolution, "levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement." Furthermore, § 66.0703(1)(a) permits the municipality to fund the cost of the work or improvement out of the proceeds of the special assessments.

¶ 28. Wisconsin Stat. § 66.0703(4)-(8) then outlines the procedure by which the municipality must exercise its power to levy special assessments, culminating in the adoption of a final resolution under subsection (8)(c)[5] and the publication of the final resolution under subsection (8)(d).[6]

¶ 29. Of significance to this case, Wis. Stat. § 66.0703(12) provides the exclusive procedure by which an aggrieved property owner may appeal from the municipality's adoption of a final resolution to levy special assessments under § 66.0703(8)(c). Section 66.0703(12)(a) states, in relevant part:

> A person having an interest in a parcel of land affected by a determination of the governing body, under sub. (8)(c) . . . , may, within 90 days after the date of the notice or of the publication of the final resolution under sub. (8)(d), appeal the determination to the circuit court of the county in which the property is located. . . .

In other words, pursuant to § 66.0703(12)(a), a 90–day period of appeal commences once the municipality publishes its final resolution levying the special assess-

---

[5] Wisconsin Stat. § 66.0703(8)(c) states: "When the governing body finally determines to proceed with the work or improvement, it shall approve the plans and specifications and adopt a resolution directing that the work or improvement be carried out and paid for in accordance with the report as finally approved." "[T]he report" in subsection (8)(c) refers to the report that a designated municipal officer or employee must prepare at the proposal stage of the special assessment. *See* § 66.0703(4), (5).

[6] Wisconsin Stat. § 66.0703(8)(d) states: "The city, town or village clerk shall publish the final resolution as a class 1 notice, under ch. 985, in the assessment district and a copy of the resolution shall be mailed to every interested person whose post-office address is known, or can be ascertained with reasonable diligence."

ments or once the municipality mails notice of the final resolution to interested persons, whichever is later. *See Mayek v. Cloverleaf Lakes Sanitary Dist. No. 1,* 2000 WI App 182, ¶ 11 & n.9, 238 Wis. 2d 261, 617 N.W.2d 235. "The statute thus sets dates certain from which the time limit proceeds rather than a more ephemeral date such as when a property owner knows of the assessment." *Id.,* ¶ 11.

■

¶ 30. An aggrieved property owner must strictly comply with the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a); the failure to do so is a forfeiture of the right to appeal. *See id.,* ¶ 13 ("A notice served more than ninety days after publication of the assessment is untimely, and a property owner's appeals rights are foreclosed."); *Gamroth v. Vill. of Jackson,* 215 Wis. 2d 251, 259, 571 N.W.2d 917 (Ct. App. 1997); *Bialk v. City of Oak Creek,* 98 Wis. 2d 469, 472, 297 N.W.2d 43 (Ct. App. 1980). "[T]he policy consideration behind this rule is to maintain a simple, ordinary and uniform way of conducting legal business in our courts. Uniformity, consistency and compliance with procedural rules are important aspects of the administration of justice. If the statutory prescriptions are to be meaningful, they must be unbending." *Gamroth,* 215 Wis. 2d at 259 (internal quotations omitted).

¶ 31. The legislature has explicitly directed that an appeal under Wis. Stat. § 66.0703(12) is the "sole remedy" of a property owner aggrieved by a special assessment levied under § 66.0703:

> An appeal under this subsection is the sole remedy of any person aggrieved by a determination of the governing body, whether or not the improvement was made according to the plans and specifications, and shall raise any question of law or fact, stated in the

notice of appeal, involving the making of the improvement, the assessment of benefits or the award of damages or the levy of any special assessment. . . .

§ 66.0703(12)(e); *see also Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah,* 278 F.3d 701, 705 (7th Cir. 2002) ("A clear reading of the statute . . . demonstrates that section 66.60(12)(a) [renumbered as Wis. Stat. § 66.0703(12)(a)] explicitly provides a claimant with the 'sole remedy' for any complaint regarding a municipality's collection of assessments under section 66.60 [renumbered as § 66.0703]."). Section 66.0703(12)(e) lists only two types of appeals that are excepted from the 90–day period of appeal in subsection (12)(a): "appeals based [1] on fraud or [2] on latent defects in the construction of the improvement discovered after the period of limitation."

¶ 32. Turning to the facts of this case, Emjay does not dispute that it failed to comply with the 90–day period of appeal set forth in Wis. Stat. § 66.0703(12)(a). The 90–day period of appeal commenced on July 12, 2004, the date on which Germantown mailed notice of the Final Resolution to all interested property owners, including Emjay. *See* § 66.0703(12)(a); *Mayek,* 238 Wis. 2d 261, ¶ 11 & n.9. Emjay, however, did not file its notice of appeal and complaint until May 30, 2008, nearly four years after Germantown mailed notice of the Final Resolution. Indeed, Emjay's brief to this court acknowledges that "[t]he notice of special assessment was made, and the 90 Day Appeal Limitation had passed, years before Emjay filed suit in 2008." As made clear in *Mayek,* 238 Wis. 2d 261, ¶ 13; *Gamroth,* 215 Wis. 2d at 259; and *Bialk,* 98 Wis. 2d at 472, an aggrieved property owner's failure to strictly comply with the 90–day period of appeal in § 66.0703(12)(a) requires dismissal of the appeal.

¶ 33. Emjay maintains, however, that its failure to comply with the 90–day period of appeal is not dispositive because Wis. Stat. § 66.0703(12)(a) does not apply in this case. In support of its position, Emjay advances several arguments, the most notable of which include: (1) Section 66.0703(12)(a) does not to apply to contingent special assessments like those levied in this case; (2) Section 66.0703(12)(a) does not apply because Germantown levied the special assessments after construction of the improvements was completed; and (3) the special assessments are fraudulent, evident by Germantown's "procedural failure" and neglect "to actually endeavor what [§ 66.0703] charges it to do." According to Emjay, these alleged deficiencies evince Germantown's lack of authority to levy the special assessments in the first instance. Citing Germantown's alleged lack of power, Emjay urges us to apply Wis. Stat. § 893.72[7] to its appeal instead of Wis. Stat. § 66.0703(12)(a).

¶ 34. Emjay's arguments miss the mark. Whether the special assessments were defective or even whether Germantown had the power to levy the special assessments do not bear on the preliminary issue of whether the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a)

---

[7] Wisconsin Stat. § 893.72 governs generally "[a]ctions contesting special assessment":

> An action to avoid any special assessment, or taxes levied pursuant to the special assessment, or to restrain the levy of the taxes or the sale of lands for the nonpayment of the taxes, shall be brought within one year from the notice thereof, and not thereafter. This limitation shall cure all defects in the proceedings, and defects of power on the part of the officers making the assessment, *except in cases where the lands are not liable to the assessment, or the city, village or town has no power to make any such assessment,* or the amount of the assessment has been paid or a redemption made.

(Emphasis added.)

applies in this case. The issue of whether § 66.0703(12)(a) applies entails a much more straightforward analysis.

¶ 35. We conclude that Emjay's appeal and complaint are governed by the 90–day period of appeal set forth in Wis. Stat. § 66.0703(12)(a). Had Emjay filed its notice of appeal and complaint within the 90–day period of appeal, the circuit court would have been able to address the merits of Emjay's arguments—including whether the special assessments were defective or whether Germantown had the power to levy the special assessments in the first instance.

¶ 36. As previously explained, an appeal under Wis. Stat. § 66.0703(12) is the "sole remedy" of a property owner aggrieved by a special assessment levied under § 66.0703. § 66.0703(12)(e). In this case, there is no question that Germantown levied the special assessments under § 66.0703 and that Emjay received notice of the same.

¶ 37. Both the Preliminary Resolution and the Final Resolution expressly provided that the special assessments were being levied pursuant to Germantown's authority under Wis. Stat. §§ 66.0701 and 66.0703 and § 8.04 of its Municipal Code. Section 8.04(4) of Germantown's Municipal Code expressly incorporates the provisions of Wis. Stat. § 66.0703,[8] and notably, section 8.04(6) specifically provides that the appeal provisions of Wis. Stat. §§ 66.0703(12) and

---

[8] Section 8.04(4) of Germantown's Municipal Code provides: "The provisions of § 66.60, Wis. Stats. [renumbered as Wis. Stat. § 66.0703], including those related to notice, hearing and the adoption of a final resolution shall, to the extent not inconsistent with this section, apply to special assessments levied under this section."

66.0701(2)[9] "apply to any special assessment levied under this section." Emjay does not dispute that it received notice of both the Preliminary Resolution and the Final Resolution. In this context, such notice is all that due process requires. *See Estate of Wolff v. Town Bd. of Town of Weston,* 156 Wis. 2d 588, 596, 457 N.W.2d 510 (Ct. App. 1990) ("A notice must be sufficient to enable the recipient to determine what he must do to prevent the deprivation of his interest.").

██

¶ 38. Furthermore, neither the Preliminary Resolution nor the Final Resolution mentions Wis. Stat. § 893.72. While this court has recognized an apparent conflict between Wis. Stat. § 66.0703(12) and the more general right to file a civil action under Wis. Stat. § 893.72 to contest a special assessment, *see Bornemann v. City of New Berlin,* 27 Wis. 2d 102, 111, 133 N.W.2d 328 (1965), the latter is simply not implicated in this case. Germantown explicitly levied the special assessments under Wis. Stat. § 66.0703. *See State ex rel. Robinson v. Town of Bristol,* 2003 WI App 97, ¶¶ 13–14, 264 Wis. 2d 318, 667 N.W.2d 14. An appeal under Wis. Stat. § 66.0703(12)(a) and (e) is limited to special assessments levied by municipalities under Wis. Stat. § 66.0703. Wisconsin Stat. § 893.72, on the other hand,

[9] Wisconsin Stat. § 66.0701(2), in turn, expressly incorporates Wis. Stat. § 66.0703(12). Wisconsin Stat. § 66.0701(2) states, in relevant part, that "[a]ny person against whose land a special assessment is levied under the ordinance may appeal in the manner prescribed in s. 66.0703(12) within 40 days of the date of the final determination of the governing body." Because it is undisputed that Emjay failed to comply with the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a), and therefore necessarily failed to comply with the 40–day period of appeal in Wis. Stat. § 66.0701(2), we make no determination as to which of the two limitation periods controls in this case.

applies to all special assessments generally. *See Bornemann,* 27 Wis. 2d at 111. "One of the well-recognized canons of statutory construction is that, in event of a conflict between a general and a specific statute, the latter controls." *Id.* Indeed, Wis. Stat. § 893.01 expressly recognizes that civil actions under chapter 893 "may be commenced only within the periods prescribed in this chapter, *except when, in special cases, a different limitation is provided by statute.*" (Emphasis added.) Wisconsin Stat. § 66.0703(12)(a) provides a different period of appeal.

¶ 39. Accordingly, whether Emjay classifies its challenge to the special assessments as a notice of appeal under Wis. Stat. § 66.0703(12) or as a complaint comprised of separate causes of action is a distinction without a difference: because all of Emjay's claims are based upon the special assessments that Germantown levied under § 66.0703, Emjay's exclusive remedy is an appeal under § 66.0703(12). *See Harbours Pointe of Nashotah,* 278 F.3d at 705–06 (concluding that the plaintiff's constitutional takings claim was governed by Wis. Stat. § 66.60(12)(a) [renumbered as Wis. Stat. § 66.0703(12)(a)] and that "any contrary interpretation of this statutory scheme would undermine the clear intent of the Wisconsin legislature").

¶ 40. Wisconsin Stat. § 66.0703(12)(e) lists only two types of appeals that are excepted from the 90–day period of appeal in subsection (12)(a): "appeals based [1] on fraud or [2] on latent defects in the construction of the improvement discovered after the period of limitation." Emjay concedes that its appeal is not based on any "latent defects in the construction of the improvement." *See* § 66.0703(12)(e). Instead, Emjay argues that the 90–day period of appeal in § 66.0703(12)(a) does not apply in this case because the special assessments are fraudulent.

271

¶ 41. It is true that an appeal based on fraud is expressly excluded from the 90–day period of appeal. Wis. Stat. § 66.0703(12)(e). However, neither Emjay's notice of appeal nor complaint alleges fraud or otherwise conveys an intent to mislead on the part of Germantown. When pressed at oral argument, Emjay advised the court that the special assessments are fraudulent because of Germantown's "procedural failure" and its neglect "to actually endeavor what [§ 66.0703] charges it to do." However, absent an intent to mislead, such procedural deficiencies, assuming they exist, do not constitute fraud. Rather, procedural deficiencies are precisely the type of allegations that "shall" be raised in an appeal under § 66.0703(12). *See* § 66.0703(12)(e) (providing that an appeal under § 66.0703(12) "shall raise any question of law or fact, stated in the notice of appeal, involving the making of the improvement, the assessment of benefits or the award of damages or the levy of any special assessment").

## V. CONCLUSION

¶ 42. We conclude that Emjay's appeal and complaint challenging the special assessments levied by Germantown are governed by the 90–day period of appeal in Wis. Stat. § 66.0703(12)(a). We further conclude that Wis. Stat. § 893.72 is inapplicable in this case. It is undisputed that Emjay filed its notice of appeal and complaint years after the 90–day period of appeal had passed, and accordingly, the circuit court properly dismissed the action.

*By the Court.*—The decision of the court of appeals is affirmed.